Donald BERGER, Barbara Dallas, William Kier, Jr., Rose Saxman and Robert Wagner

v.

EDGEWATER STEEL COMPANY, a subsidiary of Edgewater Corporation, Edgewater Corporation, Edgewater Steel Company, as Plan Administrator of the Non–Contributory Pension Plan for Salaried Employees, and John H. Kirkwood, an individual.

Appeal of EDGEWATER STEEL COMPANY and Edgewater Corporation, Appellants at Nos. 89–3465 & 89–3570.

Donald BERGER, Barbara Dallas, William Kier, Jr., Rose Saxman and Robert Wagner, Appellants at Nos. 89–3501 & 89–3596

v.

EDGEWATER STEEL COMPANY, a subsidiary of Edgewater Corporation, Edgewater Corporation, Edgewater Steel Company, as Plan Administrator of the Non–Contributory Pension Plan for Salaried Employees, and John H. Kirkwood, an individual.

Nos. 89–3465, 3501, 3570 and 3596.

United States Court of Appeals, Third Circuit.

Argued Jan. 23, 1990.

Decided Aug. 15, 1990.

As Amended Sept. 21, 1990.

Rehearing and Rehearing In Banc Denied Sept. 24, 1990.

Wm. Alvah Stewart, Ralph A. Finizio (argued), Houston Harbaugh, P.C., Pittsburgh, Pa., for Edgewater Steel Co. and Edgewater Corp.

David F. Weiner (argued), Robert C. Gallo, Gallo Weiner & Associates, Pittsburgh, Pa., for Donald Berger, Barbara Dallas, William Kier, Jr., Rose Saxman and Robert Wagner.

Before SLOVITER, HUTCHINSON and COWEN, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Five former employees (collectively "the Employees") of Edgewater Steel Company (Edgewater Steel) appeal an order of the United States District Court for the Western District of Pennsylvania granting summary judgment in favor of Edgewater Steel, Edgewater Corporation and John H.

Kirkwood (Kirkwood)[1] on all but one claim in the Employees' complaint brought under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001–1371 (West 1985 & Supp.1990). The Employees also appeal the district court's dismissal of their state law misrepresentation claims and its denial of their motion for leave to amend the complaint and their motion to compel the production of documents. Edgewater Steel and the other defendants (collectively "Edgewater") have cross-appealed the district court's entry of summary judgment in favor of three of the employees, Donald Berger (Berger), Barbara Dallas (Dallas) and Robert Wagner (Wagner). The district court awarded early retirement benefits to these three employees based on its holding that Edgewater violated ERISA.

For the following reasons, we will reverse the district court's order granting summary judgment in favor of Berger, Dallas and Wagner. We will remand the case to the district court with instructions to enter judgment in favor of Edgewater on all counts of the complaint.

### I.

In October, 1986, Kirkwood purchased Edgewater Steel from the Hillman Corporation. At the time, Edgewater Steel was in serious financial difficulty. After his purchase of the company, Kirkwood installed a new management team. The team included George Kutzmark (Kutzmark) and Joseph Rosati (Rosati). Kutzmark was Executive Vice President and Chief Operating Officer; Rosati was Manager of Industrial Relations.

To cut costs, Edgewater Steel decided to eliminate certain benefits under its Noncontributory Pension Plan for Salaried Employees (the Plan). At the same time, Edgewater Steel initiated a reduction in force. None of the Employees who brought this action was to be part of this

---

1. Edgewater Steel is a subsidiary of Edgewater Corporation. Kirkwood is the president of Edgewater Steel.

reduction in force, and none of their positions was to be eliminated.

The Plan is a defined benefit, single employer, qualified plan, subject to the vesting, funding and participation requirements of the Internal Revenue Code and ERISA. Edgewater Steel management decided to eliminate two benefits from the Plan: (1) the "special payment" portion of its pension benefits; and (2) a $330 per month supplement associated with its "70/80 retirement," which was an early retirement benefit.

Prior to these changes, a pension eligible employee who retired from Edgewater Steel had his pension benefits paid out in two forms:

(1) a special payment, which consists of a lump sum equal to thirteen weeks of vacation pay (fourteen weeks of vacation pay for those employees who retire after January 1, 1985, with twenty-five or more years of continuous service), subject to certain restrictions; this special payment is payable at the end of the month in which an employee retires and is considered payment for the first three months of the pension; and

(2) a "regular pension," which is equal to the higher of the "percent pension" or the "minimum pension" as defined in the Plan subject to adjustments and a "pension cap"; the regular pension is paid monthly commencing after the three months for which the special payment is made.

See Appellees'/Cross–Appellants' Supplemental Appendix (Supp.App.) at SA–9–SA–13.

An employee who qualified for 70/80 retirement was eligible for the special payment and regular pension. In addition, the amount of the employee's regular pension was increased by $330 per month. See Supp.App. at SA–13. Section 2.6(c) of the Plan provided that an employee could receive 70/80 retirement if the employee's retirement is in the mutual interest of the employee and the company and is approved by the company under mutually satisfactory conditions.[2] See Supp.App. at SA–8.

The Plan's claims procedure required an employee to make a written claim for benefits to the Pension Board. See Plan § 16.1, Supp.App. at SA–47. If the Pension Board denied the claim, it had to give the claimant written notice of the specific reasons for denying the claim. See id. § 16.2, Supp. App. at SA–47. The claimant could then make a written request to the Pension Board for review of the denial. See id. § 16.3, Supp.App. at SA–47.

Apart from the Plan, Edgewater Steel also had a severance pay policy. See Joint Appendix (App.) at A–31. The terms of the severance policy are not clear from the document that embodies them. The Employees claim there was a clear practice under which employees who were laid off but not eligible for a pension of any sort were granted severance pay pursuant to this separate policy. The Employees contend that anyone who had left the company, regardless of the reason, had been given severance pay as a "separation bonus." Edgewater Steel never described or distributed the terms of the severance pay policy to its employees.

Through Kirkwood, Edgewater Steel notified all salaried employees in a letter dated January 15, 1987, that the special payment and the $330 per month supplement associated with 70/80 retirement, would be eliminated from the Plan. See id. at A–29. Kirkwood's letter informed the employees

---

2. The text of § 2.6(c) is as follows:
    2.6 Any participant who shall have had at least 15 years of Continuous Service and
       (i) shall have attained the age of 55 years and whose combined age and years of Continuous Service shall equal 70 or more, or
       (ii) whose combined age and years of Continuous Service shall equal 80 or more, and

    .   .   .   .   .   .   .

       (c) who considers that it would be in his interest to retire, and the Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions,
    shall be eligible to retire and shall upon his retirement (hereinafter "70/80 retirement") be eligible for a special payment and a regular pension.
    Supp.App. at SA–8.

that this change would be effective February 1, 1987. In the letter, Kirkwood stated that this elimination of benefits was a cost-cutting necessity for Edgewater Steel.

Having received Kirkwood's January 15, 1987, letter, all of the Employees retired before February 1, 1987. All received the special payment that is provided automatically to all eligible retirees. None received the $330 per month supplement associated with 70/80 retirement or severance pay.

There are individual differences in the employment history of the Employees. Rose Saxman (Saxman) was sixty-four years old at the time she left Edgewater Steel. Saxman conceded that she was not entitled to 70/80 retirement, *see id.* at A-530, and she does not make a claim for this benefit on appeal. The remaining four Employees were eligible for 70/80 retirement only under § 2.6(c) of the Plan. As noted, that subsection allows an eligible employee early retirement only if it is in the mutual interest of the employee and the company.

Before retirement, Dallas was the Director of Employee Benefits and a member of the Pension Board. William Kier, Jr. (Kier) did not apply for 70/80 retirement. Berger, Dallas and Wagner orally requested 70/80 retirement but did not file any written application or seek to appeal Edgewater Steel's informal oral refusal. Edgewater Steel never gave any of the Employees written notice or specific reasons for denying them 70/80 retirement.

When the Employees advised Edgewater Steel they would retire, Kutzmark and Rosati decided that no 70/80 retirements would be approved under the "mutual benefit" provision of § 2.6(c) of the Plan because, in Kutzmark's words, "[t]he company cost structure wouldn't stand it." *Id.* at A-265. In addition, Kutzmark and Rosati stated that Edgewater Steel wanted all of the Employees to remain employed and therefore the company's interest was not served by their retirements. *See id.* at A-168-A-172, A-266.

Rosati also stated that none of these Employees' positions was to be eliminated as part of the company's reduction in force. *See id.* at A-168-A-170. All of the Employees were replaced after they left Edgewater Steel. *See id.* at A-227-A-228. In effect, the company adopted a blanket policy of denying all requests for 70/80 retirement under § 2.6(c) of the Plan.

On October 22, 1987, the Employees filed a complaint against Edgewater claiming violations of ERISA and misrepresentation under Pennsylvania law. The complaint alleged: (1) the elimination of the special payment violated § 204(g) of ERISA, 29 U.S.C.A. § 1054(g) (West Supp.1990), which prohibits an employer from decreasing an "accrued benefit" by amending a pension plan (Count I); (2) the amendment of the Plan violated § 510 of ERISA, 29 U.S.C.A. § 1140 (West 1985), which proscribes discrimination for the purpose of interfering with the attainment of a plan benefit (Count II, Count III, ¶¶ 34, 35); (3) Edgewater wrongfully denied all of the Employees, except Saxman, 70/80 retirements in violation of ERISA (Count III); (4) Edgewater wrongfully denied the Employees severance pay (Count IV); and (5) the Kirkwood letter, announcing the amendments to the Plan, was an intentional or negligent misrepresentation under Pennsylvania law (Counts V-VIII).

In response to the complaint, Edgewater filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all but Count IV of the complaint. The district court dismissed Counts V through VIII of the complaint, which alleged pendent state claims for misrepresentation, holding that ERISA preempted these counts.

In February, 1989, the parties filed cross-motions for summary judgment on all remaining counts of the complaint. In a Memorandum and Order dated June 13, 1989, the district court entered judgment in favor of Edgewater and against Dallas, Kier, Saxman and Wagner on all counts of the complaint. However, the court held Berger was eligible for 70/80 retirement and Edgewater's decision to deny it to him violated ERISA. Accordingly, the district court entered judgment in favor of Berger granting him 70/80 retirement and its accompanying $330 per month supplement.

All parties filed motions for reconsideration. On reconsideration, the district court concluded that Kutzmark and Rosati breached the fiduciary duties they had as plan administrators when they denied Berger, Dallas and Wagner's requests for 70/80 retirement. By Memorandum and Order dated July 25, 1989, the district court amended its Order of June 13, 1989, to grant Dallas and Wagner, in addition to Berger, 70/80 retirement and the accompanying $330 per month supplement.[3]

Despite the amended order, all of the Employees have appealed. They argue that the district court erred in: (1) ruling that Kier was not entitled to 70/80 retirement; (2) ruling that none of the Employees was entitled to severance pay; (3) ruling that Edgewater did not violate §§ 204(g) and 510 of ERISA; (4) denying their motion for leave to amend their complaint; (5) denying their motion to compel the production of documents; and (6) dismissing their state law misrepresentation claims. Edgewater has appealed the district court's order granting 70/80 retirement to Berger, Dallas and Wagner.

### II.

The district court had subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331 (West Supp.1990) because this case arose under ERISA. This Court has appellate jurisdiction pursuant to 28 U.S.C.A. § 1291 (West Supp.1990) over the final judgment of the district court.

Our scope of review over the district court's order dismissing parts of the complaint and granting summary judgment is plenary. *See Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988); *Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 280

(3d Cir.1988). We review for abuse of discretion the district court's denial of the Employees' motion for leave to amend the complaint and their motion to compel discovery. *See Coventry v. United States Steel,* 856 F.2d 514, 518 (3d Cir.1988); *Marroquin–Manriquez v. I.N.S.,* 699 F.2d 129, 134 (3d Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

### III.

To the extent the Employees seek to enforce the terms of the Plan, they must exhaust their administrative remedies before seeking judicial relief.[4] *See Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir.1990); *Zipf v. American Tel. & Tel.,* 799 F.2d 889, 891 (3d Cir.1986); *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 185 (3d Cir.1984). Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile. *See Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980); *see also Denton v. First Nat'l Bank,* 765 F.2d 1295, 1302–03 (5th Cir.1985) (relying on *Amato* ).

Here, the district court determined that resort to the Plan's administrative remedies would have been futile and accordingly, Dallas, Wagner and Berger did not have to exhaust those remedies. However, the district court held Kier failed to exhaust his administrative remedies because he never even applied for 70/80 retirement.[5]

In applying the futility exception to Dallas, Wagner and Berger, the district court concluded: (1) the evidence showed that the denial of 70/80 retirement was a "fixed policy"; (2) Edgewater's failure, even after a specific request, to provide

---

3. The appeals at Nos. 89–3465 and 89–3501 will be dismissed for lack of jurisdiction since they were both filed before the district court ruled upon the timely served motions for reconsideration. *See* Fed.R.App.P. 4(a)(4); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403–04, 74 L.Ed.2d 225 (1982) (per curiam).

4. The Employees are not required to exhaust their administrative remedies before seeking judicial relief on their claim that Edgewater's

amendment of the Plan violates § 510 of ERISA. *See Zipf v. American Tel. & Tel.,* 799 F.2d 889, 893 (3d Cir.1986). In addition, there were no administrative remedies under the severance pay policy, and the Employees received the special payment. Thus, they could not exhaust their administrative remedies prior to seeking judicial relief on their other claims related to these benefits.

5. As stated, Saxman makes no claim for 70/80 retirement.

written notice or specific reasons for the denial weighed in favor of applying the futility exception; (3) the testimony of Dallas, a member of Edgewater Steel's Pension Board, that after Kutzmark denied a request for 70/80 retirement, any administrative appeal was futile, was particularly significant; and (4) these employees under the circumstances acted reasonably in seeking immediate judicial review. *See* App. at A–121–A–122.

The Plan's administrative procedures required the Pension Board to notify a claimant in writing of the specific reasons for the denial of a claim. Although the three employees failed to make written requests for benefits, this does not excuse Edgewater's failure to comply with the Plan's administrative procedures. It is clear that Berger, Dallas and Wagner made their desire for 70/80 retirement plain to the responsible company officials. In addition, it is clear that the company had adopted a policy of denying all applications for 70/80 retirement. *See id.* at A–265. We agree with the district court that Edgewater's blanket denial of 70/80 retirement under § 2.6(c)'s mutual interest provision and Edgewater's failure to comply with the Plan's administrative procedures weigh in favor of applying the futility exception to Dallas, Wagner and Berger. Given these circumstances, any resort by these employees to the administrative process would have been futile. Thus, the district court was correct in excepting these three employees from the exhaustion requirement.

Kier argues it would have been equally futile for him to seek administrative relief because Edgewater's policy of denying requests under § 2.6(c) of the Plan for 70/80 retirement was fixed and "no matter how hard he tried to attain [70/80 retirement], [he] would have been unsuccessful." The district court concluded Kier's argument lacked merit because he never even asked for 70/80 retirement. In his deposition, Kier admitted that he never even asked for 70/80 retirement, although he said it may have been mentioned when he told Dallas he was going to retire. *See id.* at A–505–A–506. We agree with the district court's conclusion that because Kier did not request 70/80 retirement, he is precluded from seeking judicial relief on his claims seeking to enforce the terms of the Plan.[6]

## IV.

Accordingly, we must address on their merits the issues raised as to whether Edgewater's denial of 70/80 retirement to Berger, Dallas and Wagner violates ERISA. We will deal with each issue separately.

### A.

■ Section 204(g) prohibits an employer from decreasing a participant's "accrued benefit" by amending a pension plan.[7] ERISA defines an "accrued benefit" as an individual's right to a retirement benefit "determined under the plan ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C.A. § 1002(23) (West Supp.1990). Construing a 70/80 early retirement plan, like the 70/80 retirement at issue in this case, this Court held that early retirement benefits are not accrued benefits under ERISA

6. Because of our holding regarding the futility exception, and because Saxman makes no claim for 70/80 retirement, our subsequent discussion concerning: (1) whether Edgewater's denial of 70/80 retirement violated § 204(g) of ERISA; and (2) whether Edgewater breached its fiduciary duty under ERISA in denying 70/80 retirement, is applicable only to Berger, Dallas and Wagner.

7. Section 204(g), as amended, provides in relevant part:
    (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan....

    (2) For purposes of paragraph (1), a plan amendment which has the effect of—
    (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
    (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.
    29 U.S.C.A. § 1054(g).

because the statute provides that an accrued benefit commences at *normal retirement age.* Because early retirement benefits do not commence at normal retirement age, we held they are not accrued benefits. *See Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 284 (3d Cir.1988). The 70/80 retirement at issue in this case is an early retirement benefit. Thus, the 70/80 retirement is not an accrued benefit and the denial of this benefit cannot violate § 204(g).

■ Section 204(g), as amended, provides that "a plan amendment which has the effect of—(A) eliminating or reducing an early retirement benefit ... with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." 29 U.S.C.A. § 1054(g)(2). The legislative history explains that this amendment to § 204(g):

> generally protects the accrual of benefits with respect to participants who have met the requirements for a benefit as of the time a plan is amended and participants who subsequently meet the preamendment requirements. The bill does not, however, prevent the reduction of a subsidy in the case of a participant who, at the time of separation from service (whether before or after the plan amendment) has not met the preamendment requirements.

S.Rep. No. 575, 98th Cong., 2d Sess. 28, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547, 2574; *see also Hlinka,* 863 F.2d at 284 n. 10. This provision of § 204(g) does not apply to this case because none of the Employees met the requirements for 70/80 retirement at the time that Edgewater amended the Plan. This included the requirement that their early retirement be in the mutual interest of both them and the company. Although Edgewater's blanket denial of requests for

70/80 retirement could be seen as an amendment to the Plan, the instant provision still would not apply because none of the Employees met the requirements for 70/80 retirement prior to the time the blanket denial policy was instituted. All of the Employees left Edgewater Steel before meeting the requirements for 70/80 retirement. Accordingly, Edgewater's denial of 70/80 retirement to Berger, Dallas and Wagner does not violate § 204(g).

## B.

■ Berger, Dallas and Wagner also argue Edgewater breached its fiduciary duty under ERISA in denying 70/80 retirement.[8] Analyzing a plan similar to the Plan at issue in this case, this Court held in *Hlinka* that the plan administrator and pension board had no element of discretion under the plan. *See* 863 F.2d at 286. We reasoned that only the employer determines whether an employee's retirement is in the company's best interest. Neither the plan administrator nor the pension board have the authority to override the company's business decision. Once the employer determines an employee's retirement is not in the company's best interest, "[t]he only recourse of the plan administrator and the pension board [is] to deny [the employee's] request for an early retirement under the 70/80 provision." *Id.*

In this case, in making the decision as to whether the Employees' retirements were in the company's interest, Edgewater was acting in its capacity as employer and not as a fiduciary under ERISA. *See Dzinglski v. Weirton Steel Corp.,* 875 F.2d 1075, 1079–80 (4th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989); *Hlinka,* 863 F.2d at 286. Because Edgewater was acting as an employer when it determined the Employees' retirements were not in the company's interest, the

---

**8.** ERISA provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compen-

sation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A) (West Supp.1990).

plan administrator and the Pension Board had no choice but to deny benefits. *See Hlinka*, 863 F.2d at 286.

The Plan itself did not give the fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan. The administrator and Pension Board did not breach their fiduciary duties in denying the Employees' requests for 70/80 retirement, under the *de novo* standard of review made applicable by *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989),[9] because § 2.6(c) of the Plan required them to accept the employer's decision. Since Edgewater, as employer, was not acting as a fiduciary, there was no breach of fiduciary duty under ERISA.[10]

■ Although there was no breach of a fiduciary duty imposed by ERISA, this case raises the issue of whether Edgewater, as employer, breached the contractual terms of Plan § 2.6(c) when it adopted a blanket denial policy with respect to requests for 70/80 retirement, without amending the Plan. *Hlinka* involved a single employee whose request was necessarily given individual consideration. The Employees in this case did not receive individualized consideration of their applications for 70/80 retirement.

It is undisputed that Edgewater Steel wanted all of the Employees to remain with the company. Thus, even if individual attention had been given to Berger, Dallas and Wagner's requests, the company still would not have concluded that any of their retirements were in its interest since it wanted all of them to stay on. Moreover, assuming Plan § 2.6(c) requires individual attention to each request, we believe the almost unbounded discretion the employer has under *Hlinka* to determine what is in the parties' mutual interest is subject to no more than the minimal obligation of good faith. There is no evidence on this record showing that Edgewater's desire to retain these employees was motivated by any bad faith, with respect to their individual entitlement under the Plan or otherwise. Thus, as a matter of law,[11] Edgewater's action was not a breach of its duty of good faith under the Plan. Accordingly, Edgewater's failure to give individual attention to the Employees' requests was without consequence on this record.

We recognize that this conclusion upholds Edgewater's elimination of all chance for early retirement under the mutual interest provision of the Plan without going through the process of amending the Plan. The threshold question, however, is whether an amendment was required under the circumstances of this case. The Employees here had no basis for reliance on the mutual interest provision of the Plan. The Employees' depositions show that they knew they were not going to receive 70/80 retirement before they left Edgewater. The record also shows that Edgewater was in serious financial trouble at the time. We do not believe the unamended Plan can be read to require Edgewater to provide early retirement benefits on the basis of mutual interest under these circumstances.[11a] Therefore, we do not believe that Edgewater breached any duty in this case. We

---

9. Under ERISA, a fiduciary is obligated to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries." *See* 29 U.S.C.A. § 1104(a)(1) (West 1985).

10. We recognize that Edgewater states in its brief that in making its decision on the Employees' applications for 70/80 retirement, "the Company ... acted as [a] fiduciary." *See* Brief of Appellees/Cross–Appellants at 26. We believe, however, that this statement simply reflects Edgewater Steel's position that in making its decision as to whether the Employees' retirements were in the company's interest, it was acting as an employer but after the company had made this decision, it was acting as a fiduciary in administering § 2.6(c) of the Plan.

11. Because there is no evidence of bad faith on the part of Edgewater, there is no material factual dispute as to whether Edgewater breached any implied duty of good faith.

11a. Since we deal with the unamended Plan, there is no conflict between this decision and our holding in *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir.1990), precluding the application of plan amendments to individual participants until ERISA's procedures for plan amendments have been followed.

express no opinion on whether a blanket refusal of benefits would be proper absent these facts. *See Frank v. Colt Industries, Inc.,* 910 F.2d 90 (3d Cir.1990); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155 (3d Cir.1990); *see also Wolfe v. J.C. Penney Co.,* 710 F.2d 388 (7th Cir.1983).

Since Edgewater did not breach any fiduciary duty under ERISA and there is no evidence that it acted in bad faith or in violation of any enforceable contractual obligation when it denied the Employees' claims for 70/80 retirement, we conclude the district court erred in granting summary judgment in favor of Berger, Dallas and Wagner on their claims for wrongful denial of 70/80 retirement.

### V.

■ The Employees also argue they are entitled to severance pay because Edgewater breached its fiduciary duty by failing to comply with ERISA's disclosure and reporting requirements in connection with the company's severance pay policy. In support of this argument the Employees rely on *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).[12] The severance pay policy is vague. By virtue of its vagueness, it gave the fiduciary discretionary authority to determine eligibility for benefits. Thus, we review Edgewater's action surrounding this issue under the arbitrary and capricious standard. *See Bruch,* 109 S.Ct. at 956.

In *Blau,* an employer failed to comply with ERISA's procedural requirements. The company had a secret severance pay policy which it actively concealed by keeping it confidential. This was in violation of ERISA's reporting and disclosure requirements. *See* 29 U.S.C.A. §§ 1021–1031 (West 1985 & Supp.1990). The policy also

had no claims procedure as required by 29 U.S.C.A. § 1133 (West 1985). Moreover, there was evidence that under the secret policy, severance pay would be available for a company president or vice-president but not for a salaried non-union employee. *See Blau,* 748 F.2d at 1356. The Ninth Circuit reasoned that the company's violations of ERISA's procedural requirements in implementing the secret severance pay policy rose to such a level that "they alter[ed] the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally." *Id.* at 1354. The court held that "[i]n light of the evidence of serious violations of ERISA by [the employer], we find that [the employer's] decision could not be said as a matter of law not to be arbitrary and capricious...."[13] *Id.* at 1357. Thus, the court reversed the district court's entry of summary judgment in favor of the employer.

In the instant case, Edgewater Steel concedes it violated ERISA's procedural requirements by failing to describe or distribute the severance pay policy to its employees. In addition, there was no claims procedure under the severance pay policy. The written terms of the policy are rather cryptic. *See* App. at A–31. Edgewater claims there was a clear practice under the policy whereby only employees who were laid off and not eligible for an immediate pension of any sort, qualified for severance pay.[14] The Employees on the other hand contend it was common knowledge that when an employee retired, that employee received severance pay.

Edgewater's procedural violations and its administration of the severance pay policy do not rise to the level of violations in *Blau,* which influenced the court to conclude that it could not be said that the

---

**12.** The parties do not contest the district court's assumption that ERISA applies to the severance pay plan at issue in this case. We believe the district court's assumption was correct. *See Blau,* 748 F.2d at 1352.

**13.** Because the plaintiffs had not moved for summary judgment, the court declined to consider whether the employer's action was arbi-

trary and capricious as a matter of law. *See Blau,* 748 F.2d at 1357.

**14.** Because the issue is not properly raised on the record before us, we decline to consider whether Edgewater Steel's version of its severance pay policy would violate the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621–634 (West 1985 & Supp.1990).

employer's actions were not arbitrary or capricious. There is no evidence that Edgewater actively concealed its severance pay policy. Nor is there anything on this record to indicate that Edgewater was administering the severance pay policy in an unfair manner. On this record, Edgewater's actions were not arbitrary or capricious. Moreover, this Circuit has apparently rejected the reasoning that substantive remedies, such as the severance pay the Employees seek on appeal, are available for violations of ERISA's procedural requirements. *See Hozier,* 908 F.2d at 1166–71; *see also Wolfe,* 710 F.2d at 393. Thus, the district court was correct in concluding that Edgewater did not breach its fiduciary duty by denying severance pay to the Employees.

### VI.

There remain two issues concerning the proposed elimination of the special payment, a lump sum payment equal to thirteen or fourteen weeks of vacation pay, which accompanied all retirements whether early or at normal retirement age. All five employees contend the proposed elimination of this benefit violated § 204(g) of ERISA and entitled them to relief under the rationale of *Blau.* As previously noted, § 204(g) prohibits an employer from decreasing a participant's "accrued benefit" by amending a pension plan.

Although the district court held the special payment was an accrued benefit, it held that the Employees lacked standing to challenge the elimination of the special payment under § 204(g) because they all elected to take early retirement and they all received the special payment. *See* App. at A–87.

■ An accrued benefit is an individual's right to a retirement benefit (1) "determined under the plan" and (2) "expressed in the form of an annual benefit commencing at normal retirement age." *See* 29 U.S.C.A. § 1002(23). Whether the special payment is an accrued benefit is a difficult question. However, we need not decide that issue in order to address the Employees' claims under § 204(g). In general,

employees who retire and elect to receive retirement benefits without any intention of returning to employment do not have standing under ERISA to challenge subsequent changes to a retirement plan. *See Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.) (per curiam) (plaintiffs whose vested benefits under a plan have been distributed in lump sum lack standing to bring an action under ERISA), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *Yancy v. American Petrofina, Inc.,* 768 F.2d 707, 708–09 (5th Cir.1985) (per curiam) (employee lacks standing under ERISA to bring action over one year after his retirement claiming that a change in a retirement plan effective after his retirement forced him to retire early thus depriving him of several years of income and decreasing his final retirement benefits).

■ In denying the Employees standing on what seems to be a claim for a make whole remedy because of Edgewater's violation of § 204(g), the district court relied on our decision in *Saporito v. Combustion Eng'g Co.,* 843 F.2d 666 (1988), *vacated,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989), holding that an employee who elects to receive a retirement benefit lacks standing to bring a claim for breach of a fiduciary duty under ERISA because he is no longer a "participant" in the plan. *See* 29 U.S.C.A. § 1132(a)(1) (West 1985) (civil actions under ERISA are restricted to actions brought by "a participant or beneficiary"). However, apparently unknown to the district court, the Supreme Court had vacated our judgment in *Saporito* and remanded to us for further proceedings consistent with its opinion in *Bruch.* *See* 109 S.Ct. 1306. We, in turn, remanded the case in part to the district court. *See* 879 F.2d 859 (table). Thus, we can no longer rely on *Saporito* to deny standing.

However, in denying standing to the plaintiffs in *Kuntz,* the Ninth Circuit said:

The Kuntz plaintiffs are all former employees who have already received their vested benefits. There are no allegations of plans to return to work or to start accruing benefits once again under the pension plan.... Former employees

who have neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits simply do not fit within [ERISA's definition of "participant"].

*Kuntz,* 785 F.2d at 1411. In *Bruch,* the Supreme Court cited the standard enunciated in *Kuntz* with approval. *See Bruch,* 109 S.Ct. at 958. Here, as in *Kuntz,* the Employees do not claim they want to return to work. Of course, we recognize that if the Employees were constructively discharged as they do claim, they would not necessarily have to return to work in order to have standing to claim a make whole remedy. However, for the reasons set forth in Part VII of this opinion, dealing with the Employees' § 510 discrimination claim, we agree with the district court that they were not constructively discharged. We believe *Kuntz* remains good law and is persuasive on the standing issue.

In this case, the Employees all decided to retire and they received the special payment. Accordingly, the Employees lack standing to challenge under § 204(g) the elimination of the special payment, which took place after they retired, because the record fails to show they had any intent to return to work.

We also reject the Employees' claims for substantive relief under the rationale of *Blau.* Although Edgewater committed some procedural violations in administering and amending the special payment provision of the Plan, there is nothing that rises to the level of the procedural violations in *Blau.* There was no active concealment of the Plan, and a claims procedure was in place even though it was not complied with. Again, there is no evidence on the record before us that some employees received preferential treatment in Edgewater's administration of the Plan. Thus, the Employees are not entitled to substantive relief even if *Blau* remained viable in this Circuit.

## VII.

The Employees also argue that Edgewater violated § 510 of ERISA.[15] They contend that Edgewater's decision to eliminate the special payment and the $330 per month supplement associated with the 70/80 retirement, coupled with Kirkwood's letter announcing these amendments, was an intentional interference with their right to the special payment and the $330 per month supplement.[16]

In order to establish a prima facie case under § 510, an employee must show: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *See Gavalik v. Continental Can Co.,* 812 F.2d 834, 852 (3rd Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *see also Hendricks v. Edgewater Steel Co.,* 898 F.2d 385, 389 (3d Cir.1990) (relying upon *Gavalik*). In this case, the Employees argue that elimination of the special payment and the $330 per month supplement amounted to a constructive discharge that states a prima facie case under § 510.

In an action brought under Title VII, this Court has applied an objective, reasonable person test to determine whether an employee was constructively discharged. *See Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 888 (3d Cir.1984). In order to conclude that an employee was constructively discharged, a court must find "that the em-

---

15. Section 510 provides in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C.A. § 1140.

16. The Employees argue they are entitled to reinstatement and back pay as a result of Edgewater's violation of § 510. *See* Brief for Appellants/Cross–Appellees at 26–27. It is unclear whether the Employees are seeking the award of 70/80 retirement or reinstatement with back pay. They obviously would not be entitled to both. In addition, they have already received the special payment. If they were awarded reinstatement and back pay, they would not be entitled to retain the early retirement benefit they also seek.

ployer knowingly permitted conditions ... in employment so intolerable that a reasonable person subject to them would resign." *Id.* The Seventh Circuit has reasoned that with regard to a challenge to early retirement benefits under the Age Discrimination in Employment Act (ADEA) a constructive discharge occurs only if the plaintiffs show they "would have been fired (in violation of the ADEA) had they turned down the offer of early retirement." *See Henn v. National Geographic Soc'y,* 819 F.2d 824, 830 (7th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987).

■ In this case, Edgewater's conduct, which consisted of informing the Employees of the proposed Plan amendments that would eliminate the special payment and $330 per month supplement, does not rise to the level of a constructive discharge. Edgewater did not create conditions so intolerable that a reasonable person would resign. It merely decided to amend the Plan in the interest of cutting costs. There is nothing to indicate that the Employees would have been fired had they not chosen to retire and accept the special payment. To the contrary, it is undisputed that Edgewater Steel wanted all of the Employees to remain with the company. Thus, there was no constructive discharge, and the Employees have not established a prima facie case under § 510.[17]

### VIII.

■ In addition, the Employees contend the district court erred in holding that

ERISA preempted their state law claims for misrepresentation. The Employees' misrepresentation claims are based upon Kirkwood's January 15, 1987, letter informing Edgewater Steel's employees of the proposed Plan amendments. The Employees apparently allege that the letter misrepresented that the special payment would be taken away if they did not retire before February 1, 1987. Section 514(a) of ERISA, 29 U.S.C.A. § 1144(a) (West 1985), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. The district court was clearly correct in holding that § 514(a) preempts the Employees' misrepresentation claims, since they relate to an employee benefit plan. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

### IX.

■ Finally, we deal with the Employees' contention that the district court erred in denying their motion for leave to amend their complaint and their motion to compel the production of documents. On January 6, 1989, after the close of discovery, the Employees filed a motion for leave to amend. The appendix contains only the motion itself. The text of the complaint as it would appear if the amendment had been allowed is not furnished. *See* App. at A–75–A–76. Moreover, in their brief, the Employees do not explain the purpose of the amendment beyond stating that they had

---

**17.** If the Employees had established a prima facie case under § 510, "[the] burden then must shift to the employer to articulate some legitimate ... reason" for the challenged action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Gavalik,* 812 F.2d at 852–53 (applying *McDonnell Douglas* to an action under ERISA). "[T]he employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). Although the burden of production shifts to the employer at this stage, the ultimate burden of persuading the

court that the employer acted illegally rests with the employee. *Id.* at 253, 101 S.Ct. at 1093–94.

In this case, Edgewater Steel did articulate a legitimate reason for its decision to eliminate the special payment—the company's poor economic performance and its need to cut costs. *See* App. at A–255–A–256, A–265. Thus, Edgewater introduced evidence sufficient to meet its production burden, and the Employees produced no evidence to show that Edgewater's legitimate reason was a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26. Therefore, even if the Employees did produce evidence sufficient to make out a prima facie case, they did not show a violation of § 510 of ERISA.

learned during the course of discovery that one of Edgewater Steel's officers, who was also a highly compensated employee, was granted a 70/80 retirement in November, 1986, thus qualifying him for the $330 per month supplement, whereas the Employees were discriminatorily denied those benefits when they were forced to retire.

It seems to us from an examination of the motion itself that the parties were attempting to assert a new claim, based on discrimination with respect to 70/80 retirement in favor of officers or highly compensated employees or, perhaps in the alternative, a claim that such discrimination amounted to special circumstances that would entitle them to substantive relief for purely procedural violations of ERISA under the rationale of *Blau*. The district court denied the motion without stating any reasons. Because of the district court's failure to set forth its reasons, the Employees contend that its denial of their motion for leave to amend was an abuse of discretion under the rationale of *Coventry v. United States Steel*, 856 F.2d 514, 519–20 (3d Cir.1988).

We think this case is distinguishable. In *Coventry*, this Court pointed out that mere delay would not be sufficient to justify the denial of leave to amend, but that some prejudice to the non-moving party or the court must be shown. In *Coventry* we stated:

> In the present case, however, the nature of the claim that [the plaintiff] sought to add by his amendment indicates that no additional discovery would have been necessary. More importantly, it appears that any additional discovery that [the defendant] might have been required to produce would not have been unduly burdensome since it would have concerned the same subject matter as an issue already in the case (the validity of the various provisions of the 70/80 mutual

pension plan), and about which discovery had previously occurred.

*Id.* at 519.

The quoted passage demonstrates the distinction between this case and *Coventry*. Here, new and extensive discovery concerning the pre-January 15, 1987, practices of Edgewater in connection with § 2.6(c) of the Plan would have been necessary in order to develop the Employees' theory of discrimination in favor of highly compensated employees or, alternately, special circumstances that permit a substantive remedy for procedural violations of ERISA under the rationale of *Blau*. Thus, while we believe the district court should have paid heed to the teaching of *Coventry* and stated its reasons for denying the motion to amend, we think the record here shows there was no abuse of discretion.

Unlike *Coventry*, it is plain that allowing the amendment here would inject new issues into the case requiring extensive discovery. The motion not only came four and one-half months after the information on which it was based became available, but also after the close of an extended discovery period on November 15, 1988. It is clear to us, as it must have been to the district court, that granting the Employees' motion to amend to add a claim of discrimination in favor of highly compensated employees on the basis of a single incident, which occurred approximately two months before the company announced its plan to terminate that provision, would entail extensive factual investigation.

The allowance of the Employees' untimely motion for leave to amend by adding this new and substantially broader claim would put an unwarranted burden on the trial court and be likely to result in prejudice to Edgewater. Thus, we find no abuse of discretion under the circumstances of this case.[18]

18. In a related argument, the Employees also contend the district court erred in denying their motion to compel the production of documents. During discovery the Employees moved to compel Edgewater to produce certain employment contracts for "highly compensated" employees that would allegedly show that Edgewater gave those employees pension benefits not provided to other employees. The district court denied this motion without stating any reasons. In consideration of its order denying leave to amend and our unwillingness to disturb that order, we do not believe the district court abused its discretion in denying the Employees'

## X.

For the reasons stated above, we will reverse the district court's orders granting judgment in favor of Berger, Dallas and Wagner and awarding them 70/80 retirement and the $330 per month supplement. We will remand this case to the district court with instructions to enter judgment in favor of Edgewater on all counts of the complaint. Costs shall be taxed against the Employees.

SLOVITER, Circuit Judge, dissenting.

I agree with the majority's opinion as to all issues except those covered in Part IV. I respectfully disagree with the majority's holding that the plaintiffs' ERISA claim based on the denial by Edgewater Steel (Company) of the employees' 70/80 retirement benefits cannot proceed.

I begin my analysis of the issues raised as to 70/80 retirement with the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Firestone plan, like the Edgewater plan, was administered by the employer. The plan authorized severance benefits for employees released because of "a reduction in work force." *Id.* 109 S.Ct. at 951. Firestone sold five of its plants as going concerns to another company. Firestone employees who had been rehired by the purchasing company sought severance benefits under the Firestone plan which were denied to them on the ground that the sale did not constitute a reduction in work force. The issue on appeal and before the Supreme Court was the appropriate standard of review to be applied by a court reviewing the denial of benefits.

The Supreme Court recognized that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. *Id.* at 956. Noting that under the law of trusts, "courts construe terms in trust agreements without deferring to either party's interpretation," *id.* at 955, the Court held that "a denial of benefits challenged

under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 956. The Court held this standard of review applies regardless of whether the plan is funded or unfunded, and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest, although that conflict is a factor that must be weighed in determining whether there was an abuse of discretion. *Id.*

In this case, the district court held that the Edgewater plan provides the administrator with discretion, applied the arbitrary and capricious standard of review, rather than *de novo* review, to the decision of the administrator to deny benefits, and found that the decision denying benefits was arbitrary and capricious. In contrast, the majority states that "the plan administrator and the Pension Board had no choice but to deny benefits." Maj. Op. at 919. If this is so, then we are obliged under *Firestone* to apply a *de novo* standard of review to the provisions of the plan, and apparently the majority agrees.

Exercising the appropriate *de novo* standard, I believe it is clear that the Company's pension plan evidences an undertaking by the Company, as an employer, to give an employee who sought to retire under the 70/80 program and who met the age and service requirements an individualized determination as to whether the particular retirement would be in the "interest" of the Company. The majority acknowledges that the employer did not do so in this case. Instead, Rosati and Kutzmark, the "top management of Edgewater", made a decision that mutual agreements under the 70/80 plan were too expensive to the Company, and thus "the company had adopted a policy of denying all applications for 70/80 retirement." Maj. Op. at 917. Therefore, Edgewater effectively nullified the provision in the plan providing for a

---

motion to compel production of this information, which would seem to us largely material to

the claim the Employees sought to assert in their proposed amendment.

70/80 benefit when it was in the mutual interest of the employee and the Company.

The majority does not deny that Edgewater effectively amended the plan to eliminate individualized consideration of the employees' applications for 70/80 retirement. Instead, it concludes that "Edgewater's failure to give individual attention to the Employees' requests was without consequence on this record." Maj. Op. at 919. I believe that in reaching this conclusion, the majority's approach to unofficially amended plans is inconsistent with our recent opinion in *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir.1990).

In *Hozier*, we adopted the position taken by several other circuits that section 402(a)(1) of ERISA, which requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), precludes oral modifications to a plan to either increase or decrease benefits. *Hozier*, 908 F.2d at 1163. We held that when an employer does not reduce to writing an oral modification to an ERISA plan and thus fails to follow the ERISA requirements applicable to plan amendments, we must proceed as if the unamended plan was still in effect at the time the benefits were denied. Although the plan at issue in *Hozier* was a welfare plan in contrast to the pension plan at issue here, we made it clear that oral amendments to pension plans are precluded as well. *Id.*, 908 F.2d at 1163. *See also Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir.1989) (no oral modification of pension plan), *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989) (same); *Nachwalter v. Christie*, 805 F.2d 956–60 (11th Cir.1986) (same).

Under the *Hozier* holding, the plaintiffs are entitled to consideration of their applications for 70/80 retirement under the pre-amendment terms of the Edgewater plan, which in this case requires an individualized consideration of whether it was in the "interest" of the Company to permit the

three employees in question to retire with 70/80 benefits under section 2.6(c) of the Plan. The majority treats the negative decision by the employer as effectively unreviewable, subject only to a good faith standard, despite the fact that the employer did not make an individualized determination. The majority believes this result is compelled by our decision in *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279 (3d Cir. 1988).

Hlinka, a salaried senior research fellow, unsuccessfully sought early retirement under the 70/80 pension provided by Bethlehem Steel. His request was denied because his continued employment was in Bethlehem Steel's interest "because of [Hlinka's] extensive and unique technological expertise related to the project to which he was assigned." *Id.* at 284 n. 7. Significantly, in *Hlinka* we noted that during the period from 1983 to 1986, the year in which Hlinka requested 70/80 benefits, more than 1,000 employees were granted 70/80 benefits under the same mutual interest provision that Hlinka sought to invoke. *Id.* at 286. While I agree that our precedent supports giving broad leeway to an employer's decision that its interest require retention of a particular employee, I see nothing in our precedent, or indeed in any case law cited by the majority, for the proposition that similar leeway must be given to the employer's decision that *no* employee's retirement would be in its interest when that decision has been made pursuant to an unofficial amendment to the plan which is unauthorized under ERISA and violates the provisions of the plan itself.[1]

Because Edgewater never made an individualized determination as to whether retirement for the particular employees would be in its interests, and because a *post hoc* determination by it is not realistically feasible, a factfinder must decide whether an individualized determination made at that time would have been favorable to the employees. The majority states that it is undisputed that the Company

---

**1.** The Plan provides that: "[w]hile the Company expects and intends to continue the Plan, the Company may amend the Plan at any time and from time to time by resolution outlining the changes to be made...." Noncontributory Pension Plan for Salaried Employees of Edgewater Steel Company § 14.1 (1985), Supp.App. at 43.

wanted all of the employees to remain and that even if given individual attention these employees would have been denied 70/80 retirement. In effect then, the majority holds summary judgment should be granted for the defendants on the 70/80 retirement issue.

I believe that a fair examination of the record for evidence of the employer's interest vis-a-vis retention of each of the employees in question does not support that result. The record fails to satisfy the rigorous requirements for the grant of summary judgment. Any doubt as to the existence of a genuine issue should be resolved against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). The inquiry is particularly difficult where liability turns on a party's state of mind. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989); *see also Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983) (in cases where the state of mind of one of the parties is crucial to the outcome of the case, resort to summary judgment is vested with more than the usual difficulty and under the circumstances jury judgments are typically thought to be of special importance).

The majority apparently relies on the depositions of Kutzmark and Rosati, in which both stated that it was not in Edgewater's interest to have these employees retire. Maj. Op. at 915; App. at 169, 266. Yet, in a memo written immediately subsequent to a meeting with Dallas, Rosati stated that he told Dallas that Edgewater would not grant her request and that "although she didn't ask, the reason is that we are not planning to do it for anybody else." App. at 210, 238. Plainly then, in light of Rosati's contemporaneous writing showing that Edgewater did not give Dallas individualized consideration and was not going to give *any* 70/80 mutual interest benefits, a factfinder might not credit Rosati's after-the-fact testimony that on an individualized determination, the Company would have reached the same result. As this court has recently suggested, a reasonable factfinder would be entitled to treat skeptically the present testimony of management officials "who either are or were employees of defendants themselves." *Hozier*, 908 F.2d at 1166.

Indeed, the district court, after reviewing the depositions, concluded that "there may have existed a mutual interest in having the plaintiffs retire." Memorandum Op. at 14 (July 25, 1989). Certainly, the depositions of the plaintiffs show a genuine issue of material fact on the dispositive issue.

Plaintiff Dallas, who was the director of employee benefits, was outspoken to Company management in her disagreement with the Company's direction that she counsel employees that the special payment was not an accrued benefit. *See* App. at 443–44. Thus, although Dallas was not slated to be part of the work force reduction, the disagreement as to the Company's tactics may have led Edgewater, were it faced with the need to make an individualized determination as to Dallas, to permit her to retire and replace her with a more amenable director.

The district court noted that Wagner, a superintendent, testified that Edgewater eliminated all but two of the superintendents "and replaced them with the newly created hot and cold superintendents." Wagner was one of the two remaining superintendents, and the other was about to retire. The district court stated that "Wagner may have been the next superintendent in line to be eliminated." Memorandum Op. at 15. Further, Wagner testified that to entice other superintendents to retire, Edgewater gave them 70/80 benefits. A factfinder could determine that without the ineffective amendment to the plan, Edgewater might have found that it was in its interest also to grant Wagner 70/80 benefits.

Finally, Berger testified that Rosati had cut his salary and appeared to be trying to lay the groundwork to terminate him by attempting to place in his file a letter stating that he was not properly performing his job. App. at 372–74. The district court believed that it may have been in Edge-

water's interest to have Berger retire. Memorandum Op. at 15.

I do not suggest that the record ineluctably points to one conclusion or another as to the interests of the Company, but merely that there is a genuine issue for trial which precludes the majority's decision that summary judgment on the issue should have been granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The purpose behind ERISA is clear. It "was enacted to 'promote the interests of employees and their beneficiaries in employee benefit plans' ... and 'to protect contractually defined benefits.' " *Bruch*, 109 S.Ct. at 955 (citations omitted). Congress created disclosure provisions to ensure that " 'the individual participant knows exactly where he stands with respect to the plan.' " *Id.* at 958 (citing H.R. Rep. No. 93–533, p. 11 (1973), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639). Section 402(a)(1), which mandates that the plan be written, was designed to ensure that " 'every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan.' " *Hozier*, 908 F.2d at 1163 (citing H.Rep. No. 1280, 93d Cong., 2d Sess. 297, *reprinted in*, 1974 U.S.Code Cong. & Admin.News 5038, 5077–78).

I believe that the majority's decision, which effectively allows Edgewater to amend its plan by an unwritten policy, is inconsistent with ERISA. Its determination that this was without consequence in this case overlooks the record evidence and permissible inferences therefrom which could lead a factfinder to determine that it would have been in Edgewater's interest to have permitted these employees to retire, if Edgewater had been acting pursuant to the terms of the plan as reduced to writing at that time. Thus, I dissent from the majority's disposition of the claims for 70/80 retirement benefits.