R.C. JONES, John J. Birkmire, J.R. Blasch, H.J. Bollenbach, S.E. Campbell, A. Cartacki, L. Spearman–Coleman, J.P. DiDonato, J.E. Dougherty, C.J. Durnin, F.M. Eldridge, G.F. Gooch, G.F. Good, R. Herrmann, E.F. Kiely, M.M. Lamelza, P.D. McKay, R.J. Morrison, R.R. Muschert, F.G. Rupple, A. Sessoms, D.D. Slemmer, L.L. Stickler, R.L. Taylor, J.E. Vasas, D.T. White and F.T. Wojcik, Plaintiffs,

v.

AT & T COMPANY, AT & T Employees' Benefit Committee, J.R. Burlingame, Robert Allen, and D.P. Harrington, Defendants.

Civ. A. No. 91–CV–6070.

United States District Court,
E.D. Pennsylvania.

March 20, 1992.

Ronald Wolf, Philadelphia, Pa., for the plaintiffs.

David Pittinsky, Philadelphia, Pa., for the defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This is an action for injunctive and equitable relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs, twenty-seven (27) former management employees of the American Telephone and Telegraph Company ("AT & T") have filed a five-count complaint against the Defendants, AT & T, the AT & T Employees' Benefit Committee, and certain corporate personnel,[1] seeking to recover severance benefits allegedly due them under the terms of the AT & T Transition Protection Payment Plan. Before us

---

**1.** Individual Defendants in this action include: H.R. Burlingame, AT & T Senior Vice President of Human Resources and fiduciary of the AT & T Transition Protection Payment Plan; Robert Allen, AT & T Chairman of the Board; and D.P. Harrington, AT & T Vice President of Human Resources, Compensation and Systems.

now is Defendants' Motion to Dismiss all counts of the complaint for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and, in the alternative, for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), as well as Defendants' Motion to Strike Plaintiffs' demand for a jury trial and for punitive and delay damages.

At oral argument on February 6, 1992, in Easton, Pennsylvania, the parties agreed that there were no material facts in dispute, no further discovery would be required, and the question of whether Plaintiffs may recover under the terms of the AT & T Transition Protection Payment Plan should be decided by this Court as a matter of law. We agree. However, since the Defendants submitted the only copy of the AT & T Transition Protection Payment Plan to the court by way of attachment to their Motion to Dismiss, we will treat Defendants' Motion to Dismiss for failure to state a claim as one for summary judgment, in accordance with Fed.R.Civ.P. 12(b)(6) and the parties' Joint Stipulation of March 16, 1992.[2]

## I. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction, while Fed.R.Civ.P. 12(b)(6) allows a court to treat a motion to dismiss for failure to state a claim as one for summary judgment and to dismiss on the merits in accordance with the procedures of Fed.R.Civ.P. 65. Defendants base their motion on both grounds.

■ Fed.R.Civ.P. 12(b)(1) enables a defendant to "attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing

rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989). It is then up to the plaintiff to respond with facts[3] supporting a finding of federal jurisdiction, and the burden of demonstrating jurisdiction is on the plaintiff. *Id.; see also Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 898 (3d Cir.1987) (district court may resolve jurisdictional issues at any time, without a jury).

■ The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

■ On motion for summary judgment, the moving party bears the initial burden of identifying for the court those portions of the record that it believes dem-

---

**2.** The Stipulation provides:

It is hereby stipulated and agreed by and between plaintiffs, by their counsel, and defendants, by their counsel, that:

1. The AT & T Transition Protection Payment Plan annexed as Exhibit A to defendants' motion to dismiss and motion to strike is the AT & T Transition Protection Payment Plan referenced in plaintiffs' complaint and plaintiffs' answer to defendants' motion to dismiss and motion to strike;

2. In ruling on defendants' motion to dismiss and motion to strike, the Court can consider

and rely upon the AT & T Transition Protection Payment Plan; and

3. To the extent that the Court considers and relies upon the AT & T Transition Protection Payment Plan, the Court should treat defendants' motion to dismiss and motion to strike as a motion for summary judgment.

**3.** When a motion is based on facts not in the record, Fed.R.Civ.P. 43(e) allows a court to hear the matter on affidavits, testimony, or depositions.

onstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* 477 U.S. at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

## II. FACTUAL BACKGROUND

The undisputed facts are as follows. On September 28, 1989, AT & T announced that its service center located at King of Prussia, Pennsylvania would be closed. On October 13, 1989, AT & T informed each of the Plaintiffs by letter that, unless otherwise notified, they would be terminated sometime between February 1, 1990 and October 1, 1990. The letters stated in relevant part:

> Terminations under [the permanent plant closing order for the King of Prussia service center] will begin on February 1, 1990 and will be completed by October 1, 1990. Unless you are notified otherwise, your employment will be terminated during this time period. Your termination will be *without expectation of recall.*

(Complaint, Exhibit C (emphasis added)).

On October 19, 1989, AT & T announced that, effective that day, the AT & T Transition Protection Payment Plan had been terminated by action of the Board of Directors. This was after Plaintiffs had received the termination notices of October 13, 1989, but before Plaintiffs actual terminations took place. Prior to October 19, 1989, the AT & T Transition Protection Payment Plan had provided severance benefits, amounting to approximately one year's salary, to management personnel, like Plaintiffs, whose employment was ter-minated pursuant to the AT & T Force Management Guidelines. Also on October 19, 1989, AT & T announced enhancements to its management pension plan, effective December 30, 1989, and a one-time special retirement option available to all service pension eligible management employees who elected to retire on December 30, 1989.

On December 7, 1989, AT & T advised the Plaintiffs that they were not eligible for severance benefits [4] under the AT & T Transition Protection Payment Plan, and therefore, could elect either to retire from AT & T on December 30, 1989 with entitlement to both the pension enhancements and the special retirement option or remain employed into 1990. Plaintiffs all chose to accept the one-time incentive payment and to retire on December 30, 1989 rather than face possible involuntary termination sometime after February 1, 1990.

Plaintiffs allege that they were participants in the AT & T Transition Protection Payment Plan, and that, by retroactively terminating the Plan while making separation payments to certain non-management employees, Defendants discriminated against the Plaintiffs, breached their fiduciary duties to Plaintiffs, wrongfully denied benefits due under the Plan, and withdrew accrued benefits in violation of ERISA, 29 U.S.C. §§ 1140, 1109, 1132(a)(1)(B), and 1054(g). (Counts I, II, III, and IV). Plaintiffs also claim that, Defendants should be estopped under the federal common law from denying severance benefits to Plaintiffs. (Count V).

Defendants have moved to dismiss all counts of Plaintiffs' complaint for lack of standing and for failure to state a claim. Defendants have also moved to strike Plaintiffs' demand for a jury trial and for punitive and delay damages. Since Plaintiffs have agreed to withdraw Count IV of the complaint which sought accrued benefits under 29 U.S.C. § 1054(g), we proceed on Plaintiffs' remaining claims.

## III. DISCUSSION

■ ERISA governs two types of employee benefits plans—those that provide

---

4. Certain lower level, non-management personnel received severance benefits pursuant to a collective bargaining agreement to which Plaintiffs were not parties.

for "pension" benefits, *see* 29 U.S.C. § 1002(2) and those that provide for "welfare" benefits, *see* 29 U.S.C. § 1002(1). There is no dispute that, under 29 U.S.C. § 1002(1), an unfunded severance plan, like the AT & T Transition Protection Payment Plan, is an "employee welfare benefit plan." *See, e.g. Massachusetts v. Morash*, 490 U.S. 107, 116, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989); *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir.1989).

While pension plans are subject to ERISA's elaborate accrual, vesting, and funding requirements, *see* 29 U.S.C. §§ 1051–1085, Congress chose to provide employers with considerable flexibility with respect to unaccrued and nonvested welfare plans. *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160 (3d Cir.1990); *Reichelt*, 921 F.2d at 429. Although ERISA does not require employers to provide welfare benefits of any kind, ERISA does require that if welfare benefits are provided, they should be maintained in accordance with certain minimal disclosure and fiduciary requirements. *See* 29 U.S.C. §§ 1021–1031, 1101–1114. These requirements serve "two salutary purposes ...—to ensure that 'the individual participant knows exactly where he stands with respect to the plan' and 'to enable employees to police their plans.'" *Hozier*, 908 F.2d at 1170 (citations omitted). Moreover, employer disclosures will permit employees who are dissatisfied with their benefits to bargain further or seek other employment. *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3d Cir.1991). Therefore, the Third Circuit has held that absent evidence that an employer has violated these procedural requirements, "a court has no authority to draft the substantive content of [an employee welfare plan]," and must enforce the plan as written. *Air Jamaica*, 945 F.2d at 78 (citations omitted) (refusing to recognize oral modifications to a welfare plan but enforcing unfavorable written provisions of a plan against plan participants).

■ In light of these principles, it is well established, that an employer may unilaterally amend or terminate an employee welfare plan at any time, provided that benefits are amended in good faith and plan participants are on notice that they have no guaranteed benefits. *See e.g. Air Jamaica*, 945 F.2d at 78 & n. 6; *Reichelt*, 921 F.2d at 430; *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); *Young v. Standard Oil*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Sutton v. Weirton Steel Division*, 724 F.2d 406, 409 (4th Cir.), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). We turn now to the express language of the AT & T Transition Protection Payment Plan.

**A. The AT & T Transition Protection Payment Plan.**

■ Under the express terms of the AT & T Transition Protection Payment Plan, AT & T "reserves the right to make changes in the Plan from time to time or to terminate. the Plan at any time. Such changes or termination of the Plan will not affect a participant's right to any benefits which *he/she may have previously become entitled to receive*." (Defs.' Brief, Exhibit A at 17 (emphasis added)). Plaintiffs argue, that under the terms of the Plan, they became "entitled to receive" benefits on October 13, 1989, the day they all received notice that they would be terminated "without expectation of recall." Therefore, Plaintiffs maintain that both the Plan and ERISA prohibit Defendants from applying the October 19, 1989 decision to terminate the Plan retroactively. We disagree.

The Plan defines "eligibility" as follows: "In order to be eligible to receive benefits under the Plan, an employee must ... *actually terminate* his/her employment on the date(s) required by the particular Plan implementation or on a date acceptable to the Company."

(Defs.' Brief, Exhibit A at 3 (emphasis added)). Eligibility is further restricted as follows:

"Employees who terminate employment or whose employment is terminated by the Company for any other reason *not associated with nor under the terms of the AT & T Force Management Guidelines* shall not be participants in the Plan nor be eligible for any payments hereunder."

(Defs.' Brief, Exhibit A at 2 (emphasis altered)). Therefore, we find that in order for Plaintiffs to have "become entitled to receive" benefits on October 13, 1989, within the meaning of the termination clause, Plaintiffs must have done two things: (1) "actually terminate[d]" their employment on October 13, 1989, and (2) terminated employment under the terms of the AT & T Force Management Guidelines.

Plaintiffs meet neither of these requirements. First, all parties agree that by choosing to retire on December 30, 1989 and by accepting the one-time retirement incentive, Plaintiffs failed to terminate their employment under the terms of the AT & T Force Management Guidelines. (Transcript of Oral Argument—2/6/92 at 32–33.) It is undisputed that in order to terminate their employment under the Guidelines, Plaintiffs would have had to remain employed until "actually terminat[ed]" sometime after February 1, 1990. *Id.* Second, Plaintiffs did not "actually terminate" their employment until December 30, 1989 when they put in their last full day of work at AT & T and picked up their last pay check. Under the plain meaning of the language used in the Plan, we cannot construe a notice of termination "without expectation of recall" as meeting the condition that an employee "actually terminate" employment. While we sympathize with Plaintiffs' plight, *Air Jamaica* requires that we enforce the plain meaning of the contract, absent evidence that Defen-

dants have acted in bad faith or have violated ERISA's limited disclosure requirements. We turn now to one of the grounds for Defendants' Motion to Dismiss, the issue of whether or not Plaintiffs have standing to bring this action.

**B. Standing.**

■ A civil action [5] may be brought under ERISA only by a plan "participant." 29 U.S.C. § 1132(a). This is both a standing and a subject matter jurisdictional requirement. *Molnar v. Wibbelt,* 789 F.2d 244, 247 (3d Cir.1986); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 434 (4th Cir.1986). ERISA defines "participant" as:

"any employee or former employee of an employer ... *who is or may become eligible to receive a benefit* of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries *may be eligible to receive any such benefit.*"

29 U.S.C. § 1002(7) (emphasis added). In the recent case of *Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court ruled that in order to establish that one "may become eligible" for benefits, a claimant "must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." 489 U.S. 101, 117–18, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). The Court explained that a former employee "who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, ... simply does not fit within the [phrase] 'may become eligible.'" *Id.* (citations omitted).

As discussed above in Section III–A of this opinion, there is no dispute that under the express terms of the AT & T Transition Protection Payment Plan, Plaintiffs are not plan participants. The parties agree that to qualify as Plan participants, Plaintiffs must have remained employed at AT & T

---

**5.** Each of plaintiffs' claims arise under 29 U.S.C. § 1132(a). *See* 29 U.S.C. §§ 1132 and 1140 (Count I—discriminatory conduct); 29 U.S.C. §§ 1109 and 1132(a)(2) (Count II—breach of fiduciary duty); 29 U.S.C. § 1132(a)(1)(B) (Count III—recovery of benefits); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1162 n. 8 (3d

Cir.1990) (Count V—promissory estoppel) (holding that although ERISA authorizes courts to create federal common law, an action to recover benefits, albeit based on a theory of promissory estoppel, still arises under 29 U.S.C. § 1132(a)(1)(B)).

until "actually terminat[ed]" under the terms of the AT & T Force Management Guidelines.

 Notwithstanding Plaintiffs' non-participant status under the terms of the Plan, relying on *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, (3d Cir. 1988), *vacated and remanded*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989), and *Young v. AT & T Transition Protection Payment Plan*, 10 E.B.C. 1920, 1989 WL 675 (D.C.N.Y.1989), Plaintiffs assert that "but for" Defendants' alleged "misconduct" in improperly withdrawing the Plan, Plaintiffs would have been participants under the Plan and, therefore, met the jurisdictional requirements for asserting a claim against the Defendants. We can no longer rely on the "but for" test of *Saporito* to resolve issues of standing. *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 921 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). However, since we would have the equitable power to reinstate the AT & T Transition Protection Payment Plan in a proper situation, we recognize that if Plaintiffs have a "colorable claim to benefits," they would be eligible for benefits "in the future," and thus, would have standing under *Bruch.* 489 U.S. at 117–18, 109 S.Ct. at 958. We acknowledge that to require that Plaintiffs have the status of participants where they allege that AT & T wrongfully deprived them of such status would undercut ERISA's standing provision and cannot have been intended by Congress. *See Berger*, 911 F.2d at 922 (where an employee is constructively discharged, employee would not necessarily have to return to work in order to have standing to claim a make whole remedy).

However, for the reasons set forth below in Sections III–C, III–D, and III–E of our opinion, we find no evidence that Plaintiffs were wrongfully induced to retire early. Rather, we find that by choosing early retirement and by receiving the one-time special retirement benefit, Plaintiffs knowingly stripped themselves of participant status under the terms of the AT & T Transition Protection Payment Plan. *See*

*Berger*, 911 F.2d at 922; *Kuntz v. Reese*, 785 F.2d 1410 (9th Cir.), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *Yancy v. American Petrofina, Inc.*, 768 F.2d 707 (5th Cir.1985) (all holding that absent evidence of employer misconduct, having elected early retirement and having received a lump sum payment, plaintiffs lack standing to seek additional payments later). Accordingly, we find that Plaintiffs lack standing to bring this action, and we should dismiss all counts of Plaintiffs' complaint.

C. Discriminatory Conduct.

 In Count I of the Complaint, Plaintiffs allege that by retroactively terminating the AT & T Transition Protection Payment Plan and by paying separation payments to non-management employees while denying similar payments to certain management employees, the Defendants discriminated against the Plaintiffs in violation of 29 U.S.C. § 1140. Section 1140 provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. Congress enacted § 1140 "to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Accordingly, the Third Circuit has held that "[i]n order to establish a prima facie case under § 1140, an employee must show: '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 921 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991) (citations

omitted). Elimination of a plan, in and of itself, does not constitute a violation of 29 U.S.C. § 1140. *See Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir.1990); *Aronson v. Servus Rubber, Div. of Chromalloy*, 730 F.2d 12, 16 (1st Cir.), *cert. denied*, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984).

▮ Plaintiffs have failed to establish that the Defendants wrongfully interfered with their rights under the terms of the AT & T Transition Protection Payment Plan. As discussed above in Section III–A of this opinion, Plaintiffs had not yet acquired a right to benefits under the terms of the Plan on October 19, 1989 when it was terminated. There are no allegations that Plaintiffs were terminated, constructively or otherwise, with the specific intent to deny severance payments to the Plaintiffs. *See Berger*, 911 F.2d at 923; *Dytrt v. Mountain State Telephone & Telegraph Co.*, 921 F.2d 889, 896 (9th Cir.1990). Plaintiffs have presented no evidence that shows that Defendants closed the King of Prussia service center and terminated unaccrued and non-vested severance benefits for management employees based on anything but legitimate business reasons. Plaintiffs were on notice that, under the terms of the Plan, their benefits could be withdrawn at any time and would not vest until actual termination. Unlike the plaintiffs in *Deeming* and *Young*, there is no evidence that these Defendants materially misrepresented the scope of Plaintiffs' benefits or eliminated anything more than unaccrued, prospective benefits. *Compare Deeming*, 905 F.2d at 1129; *Young v. AT & T Transition Protection Payment Plan*, 10 E.B.C. 1920, 1921–22, 1989 WL 675 (D.C.N.Y.1989). Thus, Plaintiffs had no legitimate expectation to severance benefits under the AT & T Transition Protection Plan, and we must find in favor of the Defendants. *See West v. Greyhound Corp.*, 813 F.2d 951, 954–55 (9th Cir.1987); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986) (both holding that an employer may terminate unaccrued, non-vested benefits at any time without violating § 1140).

Plaintiffs also allege § 1140 discrimination because certain non-managerial employees received severance pay. However, nothing in ERISA requires that an employer provide identical benefits to all employees. Rather, ERISA merely requires that an employer treat similarly situated employees similarly. *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 n. 6 (3d Cir.1991); *Trenton v. Scott Paper Co.*, 832 F.2d 806, 808–09 (3d Cir.), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988). As noted above, this treatment only applied to certain low-level employees who were parties to a collective bargaining agreement. Accordingly, Count I of Plaintiffs' complaint is without merit.

**D. Breach of Fiduciary Duty.**

In Count II of the complaint, Plaintiffs allege that by retroactively terminating the AT & T Transition Protection Payment Plan and by paying separation payments to certain non-management employees while denying similar payments to certain management employees, the Defendants breached their fiduciary duties to Plaintiffs in violation of 29 U.S.C. § 1109.

▮ It is well established that an employer does not owe its employees a fiduciary duty when it makes a decision to amend or terminate an employee benefit plan. *See e.g. Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 (3d Cir.1990); *Young v. Standard Oil*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Sutton v. Weirton Steel Division*, 724 F.2d 406, 411 (4th Cir.), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). Therefore, as a matter of law, Defendants were not acting as fiduciaries and had no fiduciary duties when they decided to terminate the AT & T Transition Protection Payment Plan for business reasons. Similarly, Defendants decision not to terminate severance payments for non-managerial employees is a design decision, rather than an administrative decision, that does not

implicate fiduciary duties. *Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139 (7th Cir. 1991); *Trenton v. Scott Paper Co.*, 832 F.2d 806, 808–09 (3d Cir.), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988); *see also Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 414 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

In an effort to avoid the this precedent, Plaintiffs argue that the Defendants breached their fiduciary duties, not by deciding to withdraw the plan, but by misinterpreting the language of the plan and by finding that Plaintiffs did not "actually terminate" employment under the terms of the AT & T Force Management Guidelines on October 13, 1989 when Plaintiffs received notice of their impending terminations "without expectation of recall." As discussed above in Section III–A of this opinion, the Defendants have not misinterpreted the plain meaning of "actually terminate," and thus, have breached no fiduciary duty. Accordingly, Count II of Plaintiffs' complaint is without merit.

### E. Recovery of Benefits.

█ Plaintiffs' third and fifth [6] causes of action seek benefits under the terms of Defendants' severance plan. *See* 29 U.S.C. § 1132(a)(1)(B). To prevail on this claim, Plaintiffs must establish first, that the October 19, 1989 termination of the AT & T Transition Protection Payment Plan "had no legal effect as of the date they were discharged, and second, that they are entitled to benefits under the terms of the unamended plan." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162–63 (3d Cir.1990).

---

**6.** Plaintiffs characterize Count V of their complaint as a federal common law remedy under ERISA. (Pls.' Brief at 22.) Although ERISA authorizes courts to create federal common law to govern the details of an action to which the statute is silent, *see e.g. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989), the federal common law cannot be used to contradict the language and policies of ERISA. *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 n. 8 (3d Cir.1990). If the federal common law of promissory estoppel

█ As discussed above in Section III–A of this opinion, Plaintiffs cannot satisfy the first *Hozier* requirement as a matter of law. Under the express terms of the plan and as permitted by ERISA, Defendants reserved the right to withdraw the offered severance benefits at any time. Since we find no evidence of discriminatory conduct under 29 U.S.C. § 1140 and since all parties agree that the Plan was terminated by a valid action of the Board of Directors (Transcript of Oral Argument—2/6/92 at 10), we must enforce the Plan as written. As the Third Circuit stated in *Air Jamaica*,

> Reservations to the employer to make welfare benefits determinations on an individual basis are not prohibited by ERISA and allowing them furthers the interest of employees. Employers are understandably more willing to provide employee benefits when they can reserve the right to decrease or eliminate those benefits. To the extent that employees have sufficient bargaining power to obtain guaranteed benefits, ERISA will enforce those rights and will ensure— through its disclosure requirements— that employees know what benefits they will receive. Therefore, allowing employer reservations of the right to make individual benefit determinations takes nothing away from employees who can command guaranteed benefits and will allow other employees to obtain benefits the employer would refuse to provide on a guaranteed basis.

*Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78–79 (3d Cir.1991). Unlike employees who rely on some informal "understanding" about what their benefits are, Plaintiffs were on notice that they had no guaranteed benefits. Accordingly, Counts III

---

is applied in this case, it will nullify Congress' intent that severance plans be exempt from ERISA's stringent vesting requirements and be terminated at will by the employer. *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991). Accordingly, we will recognize Count V for what it is and treat plaintiffs' claim as an action "to recover benefits [allegedly] due to [plaintiffs] under the terms of [their] plan." 29 U.S.C. § 1132(a)(1)(B).

and V of Plaintiffs' complaint are without merit.

## IV. CONCLUSION

We have reviewed Counts I, II, III, and V of Plaintiffs' complaint and found that Defendants would be entitled to summary judgment or dismissal. Defendants' actions are unfortunate from Plaintiffs point of view, but they are not actionable. Count IV has been withdrawn. Since questions of jurisdiction are raised, we shall dismiss and do so with prejudice. Accordingly, Defendants' motion to strike Plaintiffs' request for a jury trial and for punitive and delay damages, will also be dismissed as moot.