In re BRIDGE INFORMATION
SYSTEMS OF, AMERICA
INC., et al., Debtors.

Tera Chand, et al., Movants.

No. 01–41593–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

May 31, 2002.

Gregory D. Willard, Lloyd A. Palans, David M. Unseth, Bryan Cave, St. Louis, MO, Thomas J. Moloney, Seth A. Stuhl, Kurt A. Mayr, Satsuki Kinouchi, Cleary,

Gottlieb, Steen & Hamilton, New York City, for Debtors.

Robert E. Eggmann, Copeland, Thompson & Farris, Clayton, MO, for Employees.

Michael A. Becker, Helfrey, Simon & Jones, P.C., Clayton, MO, Mark L. Prager, Michael J. Small, Charles F. Vihon, Foley & Lardner, Chicago, IL, for Creditors' Committee.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Chief Judge.

This case is before the Court on the application of sixteen terminated employees (collectively the "Employees") of Debtor Bridge Information Systems of America, Inc. ("Bridge") for an allowance of an administrative expense claim under 11 U.S.C. § 503(b)(1)(A). The Employees contend that they were entitled to payment under a severance plan established by Bridge (the "Plan") at the time they were terminated. Because Bridge properly terminated the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA") before it terminated the Employees, the Employees are not entitled to payment under the Plan. Accordingly, the Employees' application will be denied.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(B), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## PROCEDURAL & FACTUAL BACKGROUND

Bridge, along with several of its subsidiaries, filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2001. Prior to filing its petition for relief, Bridge established a severance plan (the "Plan") for its employees. Under the terms of the Plan, if an employee was involuntarily terminated without cause, he/she would be entitled to a severance payment based upon length of his/her employment with Bridge.

Bridge terminated the Plan effective on the petition date. Bridge terminated the Employees on September 21, 2001. Bridge did not notify the Employees of its termination of the Plan. Bridge, however, did withdraw the details of the Plan from its internal internet website on May 23, 2001. Bridge also stated in an Amended Motion to Approve a Post–Petition Severance Plan filed with this Court on August 29, 2002, that it had terminated the Plan effective as of the petition date.

The Employees filed this Application for Administrative Expense Claim on February 22, 2002. The Employees argue that Bridge had not properly terminated the Plan at the time it terminated their employment as of September 21, 2001. Accordingly, the Employees contend that they are entitled to severance payments under the terms of the Plan. The Employees further maintain that because their post-petition service to Bridge was a necessary cost of preserving the estate, their claim for severance pay under the Plan should be accorded administrative expense status under 11 U.S.C. § 503(b)(1)(A).

Bridge counters that it properly terminated the Plan prior to its termination of the Employees. Thus, Bridge argues, the Employees are not entitled to any benefits under the Plan and therefore they have no claim against the estate.

The Court finds that Bridge did properly terminate the Plan under ERISA prior

to its termination of the Employees. Therefore, the Employees are not entitled to any payment under the Plan and have no claim against the estate. Thus, their application will be denied.

## DISCUSSION

### A. Introduction

■■■ ERISA governs a debtor in possession's ability to terminate an ERISA covered employee benefit plan post-petition. *Senior Executive Benefit Plan Participants v. New Valley Corp. (In re New Valley Corp.)*, 89 F.3d 143, 148 (3d Cir. 1996). Thus, if the Plan was an employee benefit plan under ERISA, ERISA governs Bridge's ability to terminate the plan post-petition without prior notice to the Employees. Also, under ERISA, if Bridge properly terminated the Plan prior to terminating the Employees, the Employees have no claim for severance payments under the Plan. *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 136 (6th Cir.1993).

■■ The Court finds that because the Plan is an ERISA covered employee welfare benefit plan, Bridge had the right to terminate the Plan without notifying the Employees. Accordingly, the Court also determines that the Employees have no claim for severance payments under the Plan.

### B. The Plan is an ERISA Covered Employee Welfare Benefit Plan

ERISA defines a covered employee benefit plan as "an employee welfare benefit plan or an employee pension benefit plan." 29 U.S.C. § 1002(3). Thus, any employee benefit plan under ERISA must either be a welfare benefit plan or a pension benefit plan. *Kulinski v. Medtronic Bio–Medicus, Inc.*, 21 F.3d 254, 255 (8th Cir.1994).

Both parties agree that the Plan is an ERISA covered employee benefit plan under 29 U.S.C. § 1002(3). The parties,

however, disagree as to whether the Plan is a pension plan or a welfare benefit plan. The distinction between an employee welfare plan and a pension plan is important here because, as discussed below, employers must provide notice before terminating a pension plan but not a welfare plan. Accordingly, Employees assert that the Plan is a pension plan while Bridge contends it is a welfare benefit plan. The Court finds that the Plan is a welfare benefit plan under 29 U.S.C. § 1002(1).

Relevant to the instant case, ERISA defines a welfare benefit plan to include any plan established and maintained by an employer that provides an unemployment benefit to its employees. 29 U.S.C. § 1002(1). Also, an employee benefit plan is a pension plan only if it provides retirement income to employees or results in a deferral of income by employees for a period beyond the employee's termination of employment. 29 U.S.C. § 1002(2)(A). Further, Congress gave the Secretary of Labor the power to promulgate "safe harbors" under which severance plans would not be deemed pension plans under ERISA. 29 U.S.C. § 1002(2)(B)(i).

Here, there is nothing in the Plan that suggests that the severance payments provide retirement income or are a deferral of income extending beyond an employee's termination. Rather, the Plan only provides benefits to the narrow class of employees who are involuntarily terminated without cause. Thus, as with severance plans generally, the Plan is simply an unemployment benefit and is therefore an employee welfare plan under 29 U.S.C. § 1002(1). *See Kulinski*, 21 F.3d at 255; *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 937 (8th Cir.1999).

The Plan is also not a pension plan because it falls within the regulatory safe harbor promulgated by the Department of Labor under 29 U.S.C. § 1002(2)(B)(i).

Under this statutory grant of authority, the Department of Labor has stated that a severance plan is not a pension plan if: (i) the payments under the severance plan are not contingent, directly or indirectly, upon the employee's retiring; (ii) the total amount of payments under the severance plan does not exceed the equivalent of twice the employee's annual compensation during the year immediately preceding the termination of his service; and (iii) all payments to any employee are completed within 24 months of the employee's termination of service. 29 C.F.R. § 2510.3–2(b)(1).

Here, payment under the Plan commences upon the employee's involuntary termination without cause. Thus, payment under the Plan is not contingent on the employee's retiring. Also, payments under the Plan are limited to 16 weeks of pay and therefore, the total maximum amount of payments under the Plan will be less than twice the employee's annual compensation. Finally, under the Plan, Bridge was required to make payments under the Plan within 16 weeks of its termination of the employee, well within the two year limitations in the safe harbor. Therefore, the Plan in question falls within the regulatory safe harbor under which severance plans are deemed not to be pension plans.

## C. Bridge Properly Terminated the Plan

■ The Employees premise their application on an argument that Bridge did not properly terminate the Plan because it failed to provide the Employees with proper notice. The Employees specifically argue that Bridge failed to comply with the termination provisions contained in 29 U.S.C. § 1341(a) and therefore, its termination of the Plan was ineffective. Section 1341(a), however, is inapposite here because that section is only applicable to pension plans, not welfare benefit plans.

Section 1341(a)(2) requires, *inter alia,* that an employer provide an employee at least 60 days notice prior to terminating a single-employer plan. Also, § 1341(a)(1) states that the procedure outlined in the section is the exclusive means of terminating a single-employer plan. Thus, the Employees contend that because Bridge failed to provide the requisite 60 days notice required by § 1341(a)(2), its termination is *void ab initio. See Pension Benefit Guarantee Corp. v. Pritchard (In re Esco Mfg.),* 50 F.3d 315, 316 (5th Cir.1995). (Holding that a Chapter 7 Trustee's termination of a single-employer plan that did not comply with the notice requirement of § 1341(a)(2) was ineffective).

Section 1341, however, is inapplicable here for two reason. First § 1341 explicitly only applies to the termination of single-employer plans. Congress has defined a single-employer plan for purposes of Title IV of ERISA, which includes § 1341, as only including pension plans. 29 U.S.C. § 1301(a)(15). Thus, because the Plan is not a pension plan, it is not a single-employer plan for purposes of § 1341. Second, Title IV in general is only applicable to pension plans. 29 U.S.C. § 1321(a). As discussed above, the Plan is a welfare benefit plan, not a pension benefit plan. Accordingly, all of Title IV of ERISA, including the termination provisions of § 1341(a) are inapplicable to the Plan.

■ As Bridge notes, unlike pension plans, welfare benefit plans are not subject to the termination requirements of § 1341(a) and employers generally have the right to unilaterally terminate them at any time without notice to the employees. *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *Jones v. AT & T Co.,* 798 F.Supp. 1137, 1142 (E.D.Pa.1992). There are two exceptions to this general rule, neither of which is applicable here.

The first exception is that ERISA requires employers to outline in a written plan document the procedure for amending benefit plans, including welfare benefit plans, and identifying the persons having authority to make such amendments. 29 U.S.C. § 1102(b)(3). Although the statute only speaks in terms of amending plans, courts have held that § 1102(b)(3) also applies to the termination of plans. *Curtiss–Wright,* 514 U.S. at 78, 115 S.Ct. 1223; *Hennessy v. FDIC,* 58 F.3d 908, 922 (3d Cir.1995). Here, the Plan both sufficiently identifies the person having the authority to make amendments and the procedure for amending the Plan.

ERISA defines a person to include a corporation. 29 U.S.C. § 1002(9). Thus, a written plan that gives the employer corporation the power to terminate the plan sufficiently identifies the person who has the authority to amend the plan. *Curtiss–Wright,* 514 U.S. at 79, 115 S.Ct. 1223. Here, the Plan states that Bridge has the right to terminate or amend the Plan at any time. Thus, the Plan sufficiently identifies the person who has the authority to amend the Plan under § 1102(b)(3).

The Plan also sufficiently provides the procedure for terminating the Plan. The statutory requirement that the written plan document identify the procedure for amending the plan is indifferent to the level of detail that the plan provides. *Id.* at 80, 115 S.Ct. 1223. Rather, the purpose of the disclosure requirements of § 1102(b)(3) is simply to ensure that every ERISA plan has a workable amendment procedure. *Id.* at 82, 115 S.Ct. 1223. Therefore, a written plan that simply recites that the corporation has the power to amend or terminate the Plan sufficiently provides the procedure for amending the plan under § 1102(b)(3) because a corporation can only act in accordance with the well developed principles of the law of corporate governance. *Id.* at 80–81, 115 S.Ct. 1223. Thus, because the Plan gives Bridge the right to terminate the Plan, it sufficiently provides the procedure for amending or terminating the Plan as required by § 1102(b)(3).

■ A second exception to the general rule that an employer may terminate an employee welfare plan at any time is if the employee's rights to benefits vested under the terms of the written plan document. *Hughes v. 3M Retiree Med. Plan,* 281 F.3d 786, 790 (8th Cir.2002). The employee has the burden of proof in demonstrating that its benefits under the written plan had vested according to the terms of the plan document. *Hutchins v. Champion Int'l Corp.,* 110 F.3d 1341, 1345 (8th Cir.1997).

Here, the Employees do not allege that their benefits vested under the terms of the Plan. Also, the Plan clearly gives Bridge the right to terminate the Plan at any time and explicitly states that the employees have no vested rights under the Plan. Accordingly, the Employees' rights under the Plan had not vested before Bridge terminated the Plan. Therefore, neither exception to the general rule is applicable here because the Plan meets the disclosure requirements of 29 U.S.C. § 1102(b)(3) and the Employees' rights under the Plan had not vested at the time Bridge terminated the Plan.

■■ The Court notes that ERISA imposes a fiduciary obligation upon the employer or plan sponsor to promptly notify employees of the termination of a welfare plan.[1] *Rucker v. Pac. FM, Inc.,* 806 F.Supp. 1453, 1457 (N.D.Cal.1992). Em-

---

1. The employer, however, has no fiduciary duty to maintain an employee welfare plan under ERISA for any specified period of time.

*Hines v. Massachusetts Mut. Life Ins. Co.,* 43 F.3d 207, 210 (5th Cir.1995).

ployees, however, have not alleged, much less produced any evidence, that Bridge breached any fiduciary obligations under ERISA by failing to promptly notify them of the termination of the Plan.[2] Thus, the Court cannot find that Bridge breached its fiduciary obligation by failing to provide the Employees with prompt notice of its termination of the Plan.

Furthermore, even if Bridge did breach its fiduciary obligation by failing to provide prompt notice to the Employees, the Employees still would not be entitled to rescind Bridge's termination. An employee's claim for an employer's failure to properly notify the employee of a plan's termination is generally limited to monetary damages. *See Timmons v. Special Ins. Serv.*, 984 F.Supp. 997, 1006–07 (E.D.Tex.1997). A court will rescind an employer's termination of an ERISA plan because of its failure to promptly notify the employees only in extraordinary circumstances such as when the employer has actively concealed the termination of the Plan and the employees are able to show that the employer's action caused them substantive harm. *Ackerman v. Warnaco*, 55 F.3d 117, 124–25 (3d Cir.1995). The employees have the burden of proof on this issue. *Godwin v. Sun Life Assurance Co.*, 980 F.2d 323, 328 (5th Cir.1992).

Here, the Employees have not produced evidence that Bridge actively concealed its termination of the Plan. In fact, the evidence suggests that although Bridge may not have provided detailed notice of its termination of the Plan, it did not conceal its termination. For example, Bridge removed the contents of the Plan from its internal internet website on May 23, 2001. Also, Bridge recited that it had terminated the Plan in its Amended Mo-

tion to Approve a Post–Petition Severance Plan filed on August 29, 2001. Also, the Employees failed to produce any evidence that they have been substantively harmed by Bridge's actions. Therefore, the Court finds that even if Bridge did violate its fiduciary obligation to promptly notify the Employees of its termination of the Plan, rescission of Bridge's termination of the Plan is not warranted.

Because the Plan was an employee welfare plan, Bridge had the right to unilaterally terminate the Plan at any time without notice to the employees. Also, the Plan meets the disclosure requirements of 29 U.S.C. § 1102(b)(3). Further, there is nothing in the Plan itself that suggests that the Employees' benefits under the Plan had vested prior to their termination. Accordingly, Bridge had the right to terminate the Plan at any time without notice to the employees. Therefore, Bridge's termination of the Plan effective on the petition date was proper under ERISA.

### CONCLUSION

Bridge properly terminated the Plan prior to its termination of the Employees. Thus, the Employees do not have a claim for severance pay under the Plan against the estate. Therefore, the Employees' request for an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) is denied.

An Order consistent with this Memorandum Opinion will be entered this date.

**2.** Bridge is a fiduciary under ERISA because the Plan gives it the power to exercise discretionary authority in the administration of the Plan. 29 U.S.C. § 1002(21)(A).