Leonard GILLIS and Valdo A. Sargeni, on behalf of themselves and  ll others similarly situated

v.

**HOECHST CELANESE CORPORATION and Hoechst Celanese Retirement Plan.**

Civ. A. No. 90–5542.

United States District Court, E.D. Pennsylvania.

Sept. 24, 1992.

Kent Cprek, Sanford Rosenthal, Philadelphia, PA, for plaintiffs.

Laurence Z. Shiekman, Philadelphia, PA, for Hoechst.

Richard L. Strouse, Philadelphia, PA, for American Mirrex.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this case, employees claim they lost benefits when the plant where they worked was sold to another company. Plaintiffs, Leonard Gillis and Valdo A. Sargeni, are asserting claims against Hoechst–Celanese Corporation and the Hoechst–Celanese Retirement Plan under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1371, and the Delaware Wage Payment and Collection Act, Del.Code Ann. tit. 19, §§ 1101–1115. The parties submitted cross motions for summary judgment. Also pending is the plaintiffs' motion for reconsideration of my March 31, 1992, decision concerning an early retirement issue.

Having considered the briefs, I will grant the defendants' motion for summary judgment, deny the plaintiffs' motion for summary judgment, deny the motion for reconsideration, and order judgment in favor of the defendants and against the plaintiffs.

On February 27, 1987, the American Hoechst Corporation merged with the Cela-

nese Corporation. In May, 1989, Hoechst–Celanese sold its Delaware City PVC division to the American Mirrex Corporation. Mr. Gillis and Mr. Sargeni were originally salaried employees of American Hoechst, became Hoechst–Celanese salaried employees because of the merger, and then became American Mirrex salaried employees when that company bought the PVC division.

Despite the sale, Mr. Gillis, Mr. Sargeni, and the other PVC division employees continued to work at the Delaware City facility, albeit for the new employer. They kept the same jobs and did not lose any working days.

In connection with its purchase of the PVC division, American Mirrex agreed to provide substantially the same employee benefits as those of Hoechst–Celanese. Mr. Gillis and Mr. Sargeni claim, however, that they have lost severance pay, certain early retirement benefits, and vacation pay. Mr. Gillis and Mr. Sargeni seek a declaration that they deserve these benefits, appropriate funding for them, and penalties for various reporting and disclosure violations under ERISA.

In an order dated March 31, 1992, I certified Mr. Gillis and Mr. Sargeni as class representatives for the severance and vacation pay claims. In these matters, Mr. Gillis and Mr. Sargeni represent themselves and other former Hoechst–Celanese employees who now work for American Mirrex in the Delaware City PVC division. On the final two issues, the reporting violations and early retirement claims, Mr. Gillis and Mr. Sargeni are proceeding for themselves only.

To prevail on summary judgment, a party must show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, even after all of the evidence is interpreted in a way most favorable to the other party. To show there are no genuine issues, a party must show that no reasonable fact-finder, after considering all of the evidence presented, could find for the other party.

## I. The Severance Claim.

Mr. Gillis, Mr. Sargeni, and the class members claim they deserve severance benefits because their employment with Hoechst–Ce-lanese ceased after the PVC plant sale. Hoechst–Celanese agrees it no longer employs the plaintiffs, but it maintains they are not entitled to severance benefits. Hoechst–Celanese claims the plain language in the company's severance plan does not provide severance payments to employees when a company acquires their division and continues to employ them. On this basis, the Hoechst–Celanese human resources department denied the plaintiffs' request for severance benefits.

■ The Hoechst–Celanese severance plan applied to Mr. Gillis, Mr. Sargeni, and the other class members when Hoechst–Celanese sold the Delaware City PVC plant to American Mirrex. The plan explicitly gave the human resources department the right to interpret the plan and set up a standard of review for these decisions. Section 6 reads:

The Corporate Human Resources Department is responsible for administering this policy, issuing procedures and local guidelines, and handling any questions of policy interpretation, as well as determining the rights of any person to benefits under this policy. The decisions of the Corporate Human Resources Department shall be binding unless arbitrary or capricious.

■ For this reason, I must accept the human resources department's denial of severance benefits unless it was arbitrary or capricious. *See Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 119 (3d Cir.1990). The appropriate question is therefore whether the evidence shows the denial was clear error or not rational. *See Shiffler v. Equitable Life Assur. Soc.,* 838 F.2d 78, 83 (3d Cir.1988). In this case, Hoechst–Celanese's severance decision must stand.

### 1. The severance plan.

After the merger, on January 1, 1989, Hoechst–Celanese adopted a severance policy. Paragraph 2.2 of Hoechst–Celanese's "Separation Pay Policy for Salaried Employees" provides:

All regular, full-time salaried employees who are terminated by reason of
  –death
  –disability

–retirement

–gross misconduct

*–sale of all or part of a business (where the acquiring or purchasing company offers continuing employment)*

–failure to return to work following furlough or leave of absence

–any other reason not specified in 2.1

are *ineligible* for separation pay. (emphasis added).

On July 19, 1991, Mr. Sargeni testified that Hoechst–Celanese had distributed copies of the severance plans and updates to each employee over the years. He also said the human relations department made the documents available to interested employees and employees who needed access to them.

In addition, when it sold the PVC division to American Mirrex, Hoechst–Celanese held a series of meetings to inform its employees about the transaction. Hoechst–Celanese distributed a transcript of these meetings to Mr. Sargeni, Mr. Gillis, and the other employees on January 20, 1989, and also posted copies on company bulletin boards. One question directly addressed the severance issue, and the company representative's answer was consistent with the Hoechst–Celanese severance policy.

> Will there be a severance package if the new owner does not want to take me over?
>
> Yes. If you are *not* taken over at the time of the purchase and if we do not have a job for you within [Hoechst–Celanese], you will receive a severance package.

Furthermore, Mr. Gillis testified he received a copy of the severance plan from the benefits director at the PVC plant after the sale.

Under the circumstances, the uncontested evidence shows the class members were not entitled to severance pay. The plan's written severance provisions were clear, and Hoechst–Celanese communicated them to the employees both formally and informally. Since American Mirrex continued the PVC

workers' employment without interruption, the plan did not provide severance benefits. Hoechst–Celanese's human resources department acted in accordance with the relevant provisions, and therefore I must uphold its decision.[1]

### 2. The plaintiffs respond.

Mr. Gillis and Mr. Sargeni present a number of documents and situations to argue Hoechst Celanese has provided severance to employees in similar circumstances and is therefore obligated to provide severance benefits here. None of these instances or materials shows a truly similar circumstance, though, and accordingly, none forestalls summary judgment.

First, Mr. Gillis and Mr. Sargeni point to the Hoechst–Celanese VALUES program. They claim the VALUES program was the company's attempt to communicate its benefits policy to its employees and, in conjunction with certain brochures, constituted a benefits plan which would grant severance pay here. A brief look at the program and the brochures demonstrates why Mr. Gillis and Mr. Sargeni cannot prevail on this point.

Hoechst–Celanese instituted the VALUES program in February, 1988, to articulate a series of guiding principles for the newly formed company's operations. The *Hoechst Celanese Update* for that month contained a speech from a Hoechst–Celanese board member that described the program this way:

> [The institution of the Values program] is our chance to create the fundamental Values of our new company, to buy into them, and, most important, to begin implementing them throughout the corporation. We have the opportunity to establish a clear vision of the future of Hoechst Celanese. Over the next few days, we will establish Values that everyone in the corporation can identify with; Values that will provide a basis for a true merger of American Hoechst and Celanese into a true entity;

---

**1.** In fact, the only other plan that conceivably could apply to the Hoechst–Celanese PVC division employees, the American Hoechst severance plan, would not have provided severance either. The American Hoechst plan covered the PVC employees before the merger, but it also did not provide severance to "employees who are terminated by reason of sale of all or part of a business where the acquiring or purchasing company offers continued employment."

Values that will lay the foundation for Hoechst Celanese leadership—in the workplace, in the market place, and on the bottom line.

Recently, the Third Circuit held a company did not amend its ERISA benefits schedule, or "summary plan," [2] by distributing a brochure which presented an overview of company benefits. *See Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310 (3d Cir.1991). The court reasoned the brochures explicitly mentioned the actual summary plan, did not contain information that section 1022(b) of ERISA requires in a summary plan, and were perfunctory compared to the summary plan documents.

*Gridley* applies here.

At the outset, many of the brochures the plaintiffs identify as constituting a summary plan explicitly say: "This booklet summarizes certain plan documents. If there is a difference between the booklet and the documents, the documents will govern." In *Gridley,* a similar phrase led the court to conclude: "In light of this language, the drafter or drafters could not have thought, and a reasonable reader could not have concluded, that the new overview brochure itself was a summary plan description." *Id.* at 1316.

In addition, like the *Gridley* documents, the Hoechst–Celanese brochures and VALUES documents were brief and unspecific compared to the plan documents the plaintiffs already had. The VALUES materials also did not contain information required under section 1022(b).

More fundamentally, though, as the board member's speech and other materials in the *Hoechst Celanese Update* made patently clear, Hoechst–Celanese began the VALUES program to set out the company's general guiding principles. In *Gridley* general brochures that addressed specific benefits were not a summary plan. By the same logic, the VALUES documents (even in conjunction with the brochures) cannot be a summary

plan, and could not create an obligation to provide severance benefits.

Second, Mr. Gillis and Mr. Sargeni point to the February 20, 1987, amendment to the merger agreement between American Hoechst and Celanese Corp. They claim this document entitles them to severance payments, but the unambiguous language reads otherwise. In a provision similar to the Hoechst–Celanese severance policy, the merger agreement precludes severance payments when there is a "sale of all or part of a business, whether at one or more plant locations, where the acquiring company offers the affected employees continued employment and those employees accept such continued employment." In addition, even if it did provide for a severance payment, the merger agreement expired on February 27, 1989, about seven months before Hoechst–Celanese sold the PVC division to American Mirrex.

Third, Mr. Gillis and Mr. Sargeni claim American Hoechst provided severance benefits to employees at its Spartenburg and Greer, South Carolina facilities, and therefore must provide comparable benefits here. The uncontested testimony [3] reveals, however, that American Hoechst did not sell the Spartenburg plant. American Hoechst laid off the Spartenburg workers as part of a reduction in force. The Greer facility was sold, but it was a Celanese plant and the sale occurred in 1978 or 1979, approximately ten years before the Hoechst–Celanese merger. As a result, the severance benefits delivered to the Greer employees would not affect the plaintiffs, who were never Celanese employees.

Fourth, Mr. Gillis and Mr. Sargeni identify a letter distributed in conjunction with the merger of Hoechst Canada and Celanese Canada. Aside from the fact that this letter addressed Canadian workers and companies, it provides severance benefits only to employees who "may be terminated." In this way, the letter does not conflict with the

---

2. "Summary plan" is ERISA's term for a description of employee benefits. ERISA provides specific instructions about what information must appear in a summary plan.

3. This testimony includes admissions by both of the plaintiffs, Ronald K. Silversten (vice president and associate general counsel of Hoechst–Celanese), and Richard A. Carroll (director of corporate benefits for Hoechst–Celanese).

Hoechst–Celanese severance policy and cannot change it. Fifth, the plaintiffs rely on a Hoechst–Celanese filing with the SEC, but that document only discussed severance pay for terminated Celanese employees. The plaintiffs were not terminated and were never Celanese employees.

Finally, Mr. Gillis and Mr. Sargeni identify two employees who received severance benefits before leaving and without having a job. Again, though, because these workers were not continuing with the acquiring company, they would not be barred from severance under the Hoechst Celanese policy.

### 3. Equitable estoppel.

■ Just as they cannot show Hoechst–Celanese created a de facto amendment to the plan, the plaintiffs also cannot prevail on any kind of equitable estoppel claim. First, *Gridley* would require them to show they were victims of "extraordinary circumstances." See *Gridley*, 924 F.2d at 1319. In this case, where all of the plaintiffs kept their jobs and never lost a day of work, it would be impossible to conclude they experienced "extraordinary circumstances" by not receiving severance pay.

Moreover, the plaintiffs' testimony clearly shows they could not satisfy the reliance element of an equitable estoppel claim. Both plaintiffs admitted that, from the time they knew about the sale to the time of the sale, they never figured out what their severance benefits would be and did not spend any money or change their positions in anticipation of receiving the payments.

### 4. The severance claim must fail.

Because the clear terms of the Hoechst–Celanese severance plan do not provide severance benefits to Mr. Gillis, Mr. Sargeni, or the other class members, the decision to deny their severance claim could not have been arbitrary or capricious. In addition, Mr. Gillis and Mr. Sargeni have not identified documents or behavior that could demonstrate a de facto change in Hoechst–Celanese's severance benefits policy. Moreover, Mr. Gillis, Mr. Sargeni, and the other class members could not prevail on an equitable estoppel claim. For these reasons, I must enter summary judgment in favor of the defendants on the plaintiffs' severance benefits claim.

### II. The Early Retirement Benefits.

■ Under the Hoechst–Celanese Retirement Plan, employees whose age and years of service with the company added to 85 were eligible for early retirement with full benefits. This program was commonly referred to as the Rule of 85 program. Mr. Gillis and Mr. Sargeni claim Hoechst–Celanese failed to fund the Rule of 85 program when it sold the PVC division to American Mirrex. On this claim, the men represent only themselves.[4]

Both sides now agree American Mirrex has preserved the Rule of 85 benefit for any former PVC division employees of Hoechst–Celanese. The American Mirrex plan provides:

> If you are a Transferred Employee and are entitled to early retirement benefits, the amount of your pension will not be less than would be determined under the early retirement provisions of the Hoechst Celanese Retirement Plan as in effect on the day before the effective date of the current plan.

As a result of this agreement, Mr. Gillis and Mr. Sargeni argue the issue in this claim is now whether Hoechst–Celanese actually transferred enough money to fund their Rule of 85 benefits fully. This factual issue is clearly disputed, but it does not affect the outcome of the case.[5]

In my March 31, 1992, order, I discussed how *Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991), barred this claim. I noted that section 204(g)(1) of ERISA only prohibits employers

---

4. Mr. Gillis and Mr. Sargeni have conceded on their claim for the $300/month early retirement supplement.

5. This is the same argument the plaintiffs made in their motion for reconsideration of my March 31, 1992, order. I will deny that for the reasons that follow.

from reducing employees' accrued benefits, and that under *Berger*, early retirement programs like the Rule of 85 were not accrued benefits. I therefore held Hoechst–Celanese did not violate ERISA by reducing or eliminating the Rule of 85 program for any employee who had not already satisfied the program's age and service requirements.

For this reason, even if Hoechst–Celanese did not transfer enough money to fund the Rule of 85 program for Mr. Gillis and Mr. Sargeni, the men have no recourse because they have no right to the Rule of 85 benefit. I must grant summary judgment in favor of the defendants on this claim.

### III. The Reporting and Disclosure Violations.

■ Mr. Gillis and Mr. Sargeni also claim Hoechst–Celanese failed to satisfy ERISA's reporting and disclosure requirements. They seek an injunction ordering the defendants to produce various materials, and they seek relief under 29 U.S.C. § 1132(c). Section 1132(c) provides:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required ... to furnish to a participant ... within 30 days after such request may in the court's discretion be personally liable to such participant ... in the amount of up to $100 a day from the date of such failure or refusal.

Assuming the defendants have withheld information and that Mr. Gillis, Mr. Sargeni, and the class have standing to bring this claim, the undisputed testimony shows they suffered no harm. *See First Atlantic Leasing Corp. v. Tracey*, 738 F.Supp. 863, 876 (D.N.J.1990).

Mr. Sargeni described how the Hoechst–Celanese human resources department regularly provided documents containing benefits information and was willing to provide duplicates. Mr. Gillis and Mr. Sargeni also both testified they and the class members did not read the materials very carefully. In fact, they admitted most employees did not read them at all unless they were reviewing them for a particular purpose. Additionally, both plaintiffs' testimony indicates they and the other class members relied heavily on the company's oral presentations at meetings which were admittedly thorough and well attended. The plaintiffs have also testified the human resources personnel were generally forthright and accessible with regard to benefits issues. Finally, the plaintiffs have not shown they lost any benefits.

Under these circumstances, where the plaintiffs did not seek benefits materials, did not carefully read the regular distributions they received, relied heavily on the company to communicate benefits information through meetings and other verbal presentations, and most importantly, have not shown Hoechst–Celanese improperly denied them any benefits under ERISA, they have suffered no harm and there can be no reason to award relief under section 1132(c). I must grant summary judgment on this claim.

### IV. The Delaware Wage Claims.

■ Because I must grant summary judgment on each of the federal claims, there is no longer subject matter jurisdiction to consider the plaintiffs' state law claims.

### V. Conclusion.

Mr. Gillis, Mr. Sargeni, and the class members are not entitled to severance benefits under the Hoechst–Celanese severance plan's clear provisions. They have also failed to show Hoechst–Celanese created a de facto amendment to the severance plan, or that they could prevail on a theory of equitable estoppel. For these reasons, I must enter summary judgment on the severance claim.

I must also enter summary judgment in favor of the defendants and against Mr. Gillis and Mr. Sargeni on their early retirement benefits claim because the Rule of 85 was not an accrued benefit. Further, Mr. Gillis, Mr. Sargeni, and the class members cannot prevail on their reporting and disclosure claim because they suffered no harm. Finally, because there is no longer a viable federal claim, there is no longer subject matter jurisdiction, and I must dismiss this matter.

An order follows.

## ORDER

AND NOW, this 24th day of September, 1992, it is hereby ordered that:

1. The motion for summary judgment of plaintiffs, Leonard Gillis and Valdo A. Sargeni, is denied.

2. The motion for summary judgment of defendants, Hoechst Celanese Corporation and Hoechst Celanese Retirement Plan, is granted.

3. Summary judgment is entered in favor of the defendants and against the class on the severance benefit claims.

4. Summary judgment is entered in favor of the defendants and against Mr. Gillis and Mr. Sargeni on the early retirement claims, and ERISA reporting and disclosure claims.

5. The plaintiffs' state law claim for vacation pay is dismissed for lack of subject matter jurisdiction.